**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OLGA CERVANTES, an unmarried
woman; CARLOS ALMENDAREZ, a
married man; ARTURO MAXIMO, a
married man, individually and on
behalf of a class of similarly
situated individuals,
                    *Plaintiffs-Appellants,*

v.

COUNTRYWIDE HOME LOANS, INC., a
New York corporation; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., a subsidiary of MERSCORP,
INC., a Delaware corporation;
MERSCORP, INC.; FEDERAL HOME
LOAN MORTGAGE CORPORATION, a
foreign corporation, AKA Freddie
Mac; FEDERAL NATIONAL
MORTGAGE ASSOCIATION, a foreign
corporation; GMAC MORTGAGE,
LLC, a Delaware corporation;
NATIONAL CITY MORTGAGE, a
foreign company and a division of
National City Bank, a foreign
company; J.P. MORGAN CHASE
BANK, N.A., a New York
corporation; CITIMORTGAGE, INC., a
New York corporation;

16977

HSBC MORTGAGE CORPORATION,
U.S.A., a Delaware corporation;
AIG UNITED GUARANTY
CORPORATION, a foreign
corporation; WELLS FARGO BANK,
N.A., a California corporation,
DBA Wells Fargo Home Equity;
BANK OF AMERICA, N.A., a foreign
corporation; GE MONEY BANK, a
foreign company; PNC FINANCIAL
SERVICES GROUP, INC., a
Pennsylvania corporation;
NATIONAL CITY CORPORATION, a
subsidiary of PNC Financial
Services Group; NATIONAL CITY
BANK, a subsidiary of National
City Corporation; MERRILL LYNCH
& COMPANY, INC., a subsidiary of
Bank of America Corporation;
FIRST FRANKLIN FINANCIAL
CORPORATION, a subsidiary of
Merrill Lynch & Company, Inc.;
LASALLE BANK, N.A., a subsidiary
of Bank of America; TIFFANY &
BOSCO P.A., an Arizona
professional association,
            *Defendants-Appellees.*

No. 09-17364

D.C. No.
2:09-cv-00517-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
February 16, 2011—San Francisco, California

Filed September 7, 2011

Before: Richard C. Tallman, Johnnie B. Rawlinson,* and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*Due to the death of the Honorable David R. Thompson, the Honorable Johnnie B. Rawlinson, United States Circuit Judge for the Ninth Circuit, has been drawn to replace him on this panel. Judge Rawlinson has read the briefs, reviewed the record, and listened to the audio recording of oral argument held on February 16, 2011.

## COUNSEL

William A. Nebeker and Valerie R. Edwards, Koeller Nebeker Carlson & Haluck, LLP, Phoenix, Arizona, and Robert Hager and Treva Hearne, Hager & Hearne, Reno, Nevada, for the appellants.

Timothy J. Thomason, Mariscal Weeks McIntyre & Friedlander, P.A., Phoenix, Arizona, Thomas M. Hefferon, Goodwin Procter, LLP, Washington, DC, Howard N. Cayne, Arnold & Porter, LLP, Washington, DC, Stephen E. Hart, Federal Housing Finance Agency, Washington, DC, Mark S. Landman, Landman Corsini Ballaine & Ford P.C., New York, New York, and Robert M. Brochin, Morgan, Lewis & Bockius, LLP, Miami, Florida, for the appellees.

# OPINION

CALLAHAN, Circuit Judge:

This is a putative class action challenging origination and foreclosure procedures for home loans maintained within the Mortgage Electronic Registration System (MERS). The plaintiffs appeal from the dismissal of their First Amended Complaint for failure to state a claim. In their complaint, the plaintiffs allege conspiracies by their lenders and others to use MERS to commit fraud. They also allege that their lenders violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., and the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, and committed the tort of intentional infliction of emotional distress by targeting the plaintiffs for loans they could not repay. The plaintiffs were denied leave to file their proposed Second Amended Complaint, and to add a new claim for wrongful foreclosure based upon the operation of the MERS system.

On appeal, the plaintiffs stand by the sufficiency of some of their claims, but primarily contend that they could cure any pleading deficiencies with a newly amended complaint, which would include a claim for wrongful foreclosure. We are unpersuaded that the plaintiffs' allegations are sufficient to support their claims. Although the plaintiffs allege that aspects of the MERS system are fraudulent, they cannot establish that they were misinformed about the MERS system, relied on any misinformation in entering into their home loans, or were injured as a result of the misinformation. If anything, the allegations suggest that the plaintiffs were informed of the exact aspects of the MERS system that they now complain about when they agreed to enter into their home loans. Further, although the plaintiffs contend that they can state a claim for wrongful foreclosure, Arizona state law does not currently recognize this cause of action, and their claim is, in any case, without a basis. The plaintiffs' claim depends upon the conclusion that any home loan within the

MERS system is unenforceable through a foreclosure sale, but that conclusion is unsupported by the facts and law on which they rely. Because the plaintiffs fail to establish a plausible basis for relief on these and their other claims raised on appeal, we affirm the district court's dismissal of the complaint without leave to amend.

## I.

The focus of this lawsuit—and many others around the country—is the MERS system.

## 1. How MERS works

MERS is a private electronic database, operated by MERS-CORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the "lender." The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan. Many of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—are members of MERS and pay a fee to use the tracking system. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan, and (2) a deed of trust, or mortgage, that transfers legal title in the property as collateral to secure the loan in the event of default. State laws require the lender to record the deed in the county in which the property is

located. Any subsequent sale or assignment of the deed must be recorded in the county records, as well.

This recording process became cumbersome to the mortgage industry, particularly as the trading of loans increased. *See* Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Pub. Int. L. 177, 178 (2010). It has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded. *See id.* at 180; *Jackson*, 770 N.W.2d at 490. MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender. *Jackson*, 770 N.W.2d at 490.

At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

In the event of a default on the loan, the lender may initiate foreclosure in its own name, or may appoint a trustee to initiate foreclosure on the lender's behalf. However, to have the legal power to foreclose, the trustee must have authority to act as the holder, or agent of the holder, of both the deed and the note together. *See Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 167 (Kan. 2009). The deed and note must be held together because the holder of the note is only entitled to

repayment, and does not have the right under the deed to use the property as a means of satisfying repayment. *Id.* Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment. *Id.* One of the main premises of the plaintiffs' lawsuit here is that the MERS system impermissibly "splits" the note and deed by facilitating the transfer of the beneficial interest in the loan among lenders while maintaining MERS as the nominal holder of the deed.

The plaintiffs' lawsuit is also premised on the fact that MERS does not have a financial interest in the loans, which, according to the plaintiffs, renders MERS's status as a beneficiary a sham. MERS is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan. MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS. *See* Dordan, 12 Loy. J. Pub. Int. L. at 182; *Jackson*, 770 N.W.2d at 491. As a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans. *Id.*

## 2.   The named plaintiffs

The three named plaintiffs in this case, Olga Cervantes, Carlos Almendarez, and Arturo Maximo, obtained home loans or refinanced existing loans in 2006. All three signed promissory notes with their lenders—Cervantes with Countrywide Home Loans, and Almendarez and Maximo with First Franklin. Each executed a deed of trust in favor of his or her lender, naming MERS as the "beneficiary" and as the "nominee" for the lender and lender's "successors and assigns."

All three plaintiffs are Hispanic, and Almendarez and Maximo do not speak or read English. Almendarez and Maximo negotiated the mortgage loans with their lenders in Spanish,

but were provided with, and signed, copies of their loan documents written in English.

The plaintiffs subsequently defaulted on their loans. Following Cervantes's default, trustee Recontrust Company initiated non-judicial foreclosure proceedings by recording a notice of a trustee's sale in the county records. The parties have not addressed the status of the noticed sale. Following defaults by Almendarez and Maximo, their lender, First Franklin, appointed LaSalle Bank as its trustee to initiate non-judicial foreclosure proceedings. MERS recorded documents with the county assigning its beneficial interest in the deeds of trust to La Salle Bank. Later, Michael Bosco of Tiffany & Bosco was substituted in as First Franklin's trustee. Michael Bosco sold Almendarez's house at public auction in February 2009. The sale of Maximo's property was cancelled in April 2009.

### 3. Procedural history

Cervantes filed suit in March 2009. Almendarez and Maximo joined the lawsuit, and the plaintiffs filed their First Amended Complaint a few days later. The First Amended Complaint names several defendants, including the plaintiffs' lenders, the trustees for the lenders, MERS, and MERS members who are named only as co-conspirators based on their role in using the MERS system. The defendants filed several motions to dismiss, prompting the plaintiffs to file a motion for leave to amend, along with a proposed Second Amended Complaint. The district court held a hearing on the various motions, at which the plaintiffs orally proposed to amend their complaint with a wrongful foreclosure claim. The district court granted the motions to dismiss the First Amended Complaint, and denied the motion for leave to amend on the ground that amendment would be futile. The plaintiffs appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory. *Mendiondo*, 521 F.3d at 1104. A complaint that alleges only "labels and conclusions" or a "formulaic recitation of the elements of the cause of action" will not survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The district court's denial of leave to amend the complaint is reviewed for an abuse of discretion. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam).[1]

## III.

The plaintiffs challenge the dismissal of their complaint without leave to amend but, on appeal, only address the district court's: (1) dismissal of their claim for conspiracy to commit fraud through the MERS system; (2) failure to address their oral request for leave to add a wrongful foreclosure claim; (3) dismissal of trustee Tiffany & Bosco from the

---

[1]The plaintiffs have requested that we take judicial notice of orders of the United States District Court for the District of Arizona dismissing complaints without prejudice in pending multidistrict litigation concerning MERS. The plaintiffs imply that it was inconsistent for the same district court to deny leave to amend here. We deny the requests because the orders are not relevant.

suit; (4) denial of leave to amend their pleadings regarding equitable tolling of their TILA and Arizona Consumer Fraud Act claims; and (5) dismissal of their claim for intentional infliction of emotional distress. We address these claims in turn, and do not consider the dismissed claims that are not raised on appeal. *Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("We will not consider any claims that were not actually argued in [appellant's] opening brief.").

## 1. Conspiracy to commit fraud through the MERS system

On appeal, the plaintiffs contend that they sufficiently alleged a conspiracy among MERS members to commit fraud. In count seven of the First Amended Complaint, they allege that MERS members conspired to commit fraud by using MERS as a sham beneficiary, promoting and facilitating predatory lending practices through the use of MERS, and making it impossible for borrowers or regulators to track the changes in lenders.

**[1]** Under Arizona law, a claim of civil conspiracy must be based on an underlying tort, such as fraud in this instance. *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000). To show fraud, a plaintiff must identify "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; [and] (9) his consequent and proximate injury." *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982).

**[2]** The plaintiffs' allegations fail to address several of these necessary elements for a fraud claim. The plaintiffs have not identified any representations made to them about the

MERS system and its role in their home loans that were false and material. None of their allegations indicate that the plaintiffs were misinformed about MERS's role as a beneficiary, or the possibility that their loans would be resold and tracked through the MERS system. Similarly, the plaintiffs have not alleged that they relied on any misrepresentations about MERS in deciding to enter into their home loans, or that they would not have entered into the loans if they had more information about how MERS worked. Finally, the plaintiffs have failed to show that the designation of MERS as a beneficiary caused them any injury by, for example, affecting the terms of their loans, their ability to repay the loans, or their obligations as borrowers. Although the plaintiffs allege that they were "deprived of the right to attempt to modify their toxic loans, as the true identity of the actual beneficial owner was intentionally hidden" from them, they do not support this bare assertion with any explanation as to how the operation of the MERS system actually stymied their efforts to identify and contact the relevant party to modify their loans. Thus, the plaintiffs fail to state a claim for conspiracy to commit fraud through the MERS system, and dismissal of the claim was proper.

[3] While the plaintiffs' allegations alone fail to raise a plausible fraud claim, we also note that their claim is undercut by the terms in Cervantes's standard deed of trust, which describe MERS's role in the home loan.[2] For example, the plaintiffs allege they were defrauded because MERS is a "sham" beneficiary without a financial interest in the loan, yet the disclosures in the deed indicate that MERS is acting "solely as a nominee for Lender and Lender's successors and assigns" and holds "only legal title to the interest granted by

---

[2]Cervantes's deed of trust, attached to MERSCORP's reply in support of its motion to dismiss, may be considered at the pleadings stage because the complaint references and relies on the deed, and its authenticity is unquestioned. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam).

Borrower in this Security Instrument." Further, while the plaintiffs indicate that MERS was used to hide who owned the loan, the deed states that the loan or a partial interest in it "can be sold one or more times without prior notice to Borrower," but that "[i]f there is a change in Loan Servicer, Borrower will be given written notice of the change" as required by consumer protection laws. Finally, the deed indicates that MERS has "the right to foreclose and sell the property." By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents. *See Kenly v. Miracle Props.*, 412 F. Supp. 1072, 1075 (D. Ariz. 1976) (explaining that a deed of trust is "an essentially private contractual arrangement"). In light of the explicit terms of the standard deed signed by Cervantes, it does not appear that the plaintiffs were misinformed about MERS's role in their home loans.

**[4]** Moreover, amendment would be futile. In their proposed Second Amended Complaint, the plaintiffs seek to add further detail concerning how MERS works in general and how it has facilitated the trade in mortgage-backed securities. But none of the new allegations cure the First Amended Complaint's deficiencies: the plaintiffs have not shown that they received material misrepresentations about MERS that they detrimentally relied upon. Accordingly, we affirm the district court's dismissal, without leave to amend, of the claim for conspiracy to commit fraud through the MERS system.

## 2.   Wrongful foreclosure

The plaintiffs contend that the district court abused its discretion by dismissing their complaint without leave to add a wrongful foreclosure claim. The only mention of a wrongful foreclosure claim was during the hearing on the plaintiffs' motion for leave to amend and the defendants' motions to dismiss. Although the plaintiffs expressed their intention to add a wrongful foreclosure claim, they failed to include it in their proposed Second Amended Complaint. Moreover, during the hearing, the plaintiffs stated only a general theory of the

claim: they posited that any foreclosure on a home loan tracked in the MERS system is "wrongful" because MERS is not a true beneficiary. As the plaintiffs describe it on appeal, their claim is that "the MERS system was used to facilitate wrongful foreclosure based on the naming of MERS as the beneficiary on the deed of trust, which results in the note and deed of trust being split and unenforceable."

**[5]** The plaintiffs' oral request to add a wrongful foreclosure claim was procedurally improper and substantively unsupported. The district court's local rules require the plaintiffs to submit a copy of the proposed amended pleadings along with a motion for leave to amend. *See* D. Ariz. Civ. L. R. 15.1. The plaintiffs failed to do so. Further, they failed to provide the district court with an explanation of the legal and factual grounds for adding the claim. It is particularly notable here that Arizona state courts have not yet recognized a wrongful foreclosure cause of action. Although a federal court exercising diversity jurisdiction is "at liberty to predict the future course of [a state's] law," plaintiffs choosing "the federal forum . . . [are] not entitled to trailblazing initiatives under [state law]." *Ed Peters Jewelry Co. v. C & J Jewelry Co., Inc.*, 124 F.3d 252, 262- 63 (1st Cir. 1997) (affirming dismissal of a wrongful foreclosure claim when no such action existed under state law). Under the circumstances, we conclude that it was not an abuse of discretion for the district court to deny leave to amend without addressing the plaintiffs' proposed claim for wrongful foreclosure. *See Gardner v. Martino (In re Gardner)*, 563 F.3d 981, 991 (9th Cir. 2009) (concluding that the district court did not abuse its discretion by denying leave to amend where the party seeking leave failed to attach a proposed amended complaint in violation of local rules and failed to articulate a factual and legal basis for amendment).

**[6]** In any event, leave to amend would be futile because the plaintiffs cannot state a plausible basis for relief. Looking to states that have recognized substantive wrongful foreclo-

sure claims, we note that such claims typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower. *See, e.g.*, *Ed Peters Jewelry Co.*, 124 F.3d at 263 n.8 (noting that the Massachusetts Supreme Court recognized a claim for wrongful foreclosure where no default had occurred in *Mechanics Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231, 1236 (Mass. 1979)); *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct. App. 2009) (stating that "a plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose" (internal alteration and citation omitted)); *Gregorakos v. Wells Fargo Nat'l Ass'n*, 647 S.E.2d 289, 292 (Ga. App. 2007) ("In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (internal quotation marks and alteration omitted)); *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983) ("[T]he material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised."). Similarly, the case that the plaintiffs cite for the availability of a wrongful foreclosure claim under Arizona law, *Herring v. Countrywide Home Loans, Inc.*, No. 06-2622, 2007 WL 2051394, at *6 (D. Ariz. July 13, 2007), recognized such a claim where the borrower was not in default at the time of foreclosure. The plaintiffs have not alleged that Cervantes's or Maximo's homes were sold and, in any event, all are in default and have not identified damages. Thus, under the established theories of wrongful foreclosure, the plaintiffs have failed to state a claim.

Instead, the plaintiffs advance a novel theory of wrongful foreclosure. They contend that all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the

system splits the deed from the note, and, thus, no party is in a position to foreclose.

**[7]** Even if we were to accept the plaintiffs' premises that MERS is a sham beneficiary and the note is split from the deed, we would reject the plaintiffs' conclusion that, as a necessary consequence, no party has the power to foreclose. The legality of MERS's role as a beneficiary may be at issue where MERS initiates foreclosure in its own name, or where the plaintiffs allege a violation of state recording and foreclosure statutes based on the designation. *See, e.g., Mortgage Elec. Registration Sys. v. Saunders*, 2 A.3d 289, 294-97 (Me. 2010) (concluding that MERS cannot foreclose because it does not have an independent interest in the loan because it functions solely as a nominee); *Landmark Nat'l Bank*, 216 P.3d at 165-69 (same); *Hooker v. Northwest Tr. Servs.*, No. 10-3111, 2011 WL 2119103, at *4 (D. Or. May 25, 2011) (concluding that the defendants' failure to register all assignments of the deed of trust violated the Oregon recording laws so as to prevent non-judicial foreclosure). *But see Jackson*, 770 N.W.2d at 501 (concluding that defendants' failure to register assignments of the beneficial interest in the mortgage loan did not violate Minnesota recording laws so as to prevent non-judicial foreclosure). This case does not present either of these circumstances and, thus, we do not consider them.

**[8]** Here, MERS did not initiate foreclosure: the trustees initiated foreclosure in the name of the lenders. Even if MERS were a sham beneficiary, the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after the plaintiffs defaulted on their loans. The plaintiffs' allegations do not call into question whether the trustees were agents of the lenders. Rather, the foreclosures against Almendarez and Maximo were initiated by the trustee Tiffany & Bosco on behalf of First Franklin, who is the original lender and holder of Almendarez's and Maximo's promissory notes. Although it is unclear from the pleadings who the current lender is on plaintiff Cervantes's

loan, the allegations do not raise any inference that the trustee Recontrust Company lacks the authority to act on behalf of the lender.

Further, the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders. *See Landmark Nat'l Bank*, 216 P.3d at 167. Moreover, the plaintiffs have not alleged violations of Arizona recording and foreclosure statutes related to the purported splitting of the notes and deeds.

**[9]** Accordingly, the plaintiffs have not raised a plausible claim for wrongful foreclosure, and we conclude that dismissal of the complaint without leave to add such a claim was not an abuse of discretion.

## 3.  Injunctive relief against Tiffany & Bosco

**[10]** The plaintiffs contend that the district court improperly dismissed the trustee Tiffany & Bosco from this suit under Arizona Revised Statute 33-807(E). Section 33-807(E) provides that a "trustee is entitled to be immediately dismissed" from any action other than one "pertaining to a breach of the trustee's obligations," because the trustee is otherwise bound by an order entered against a beneficiary for actions that the trustee took on its behalf. The only breach that the plaintiffs allege against Tiffany & Bosco is that it failed to recognize that its appointment was invalid. According to the plaintiffs, the appointment was invalid because MERS is a sham beneficiary and lacks power to "appoint" a trustee. However, a trustee such as Tiffany & Bosco has the "absolute right" under Arizona law "to rely upon any written direction or information furnished to him by the beneficiary." Ariz. Rev. Stat. § 33-820(A). Thus, Tiffany & Bosco did not have an obligation to consider whether its presumptively legal appointment as trustee, which was recorded in the county records, was invalid based on the original designation of

MERS as a beneficiary. Accordingly, Tiffany & Bosco was properly dismissed.

### 4.   Equitable Tolling and Estoppel

The plaintiffs contend that the district court failed to address the equitable tolling of their claims under TILA and the Arizona Consumer Fraud Act and, in any event, abused its discretion by denying the plaintiffs leave to amend their allegations in support of equitable tolling and estoppel. A district court may dismiss a claim "[i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). However, a district court may do so "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.*

**[11]** The plaintiffs' claims under TILA and the Arizona Consumer Fraud Act are subject to one-year statutes of limitations. 15 U.S.C. § 1640(e); Ariz. Rev. Stat. § 12-541(5). Both limitations periods began to run when the plaintiffs executed their loan documents, because they could have discovered the alleged disclosure violations and discrepancies at that time. *See* 15 U.S.C. § 1640(e) (the one-year limitations period for a TILA claim begins when the violation occurred); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994) (a cause of action for consumer fraud under Arizona law accrues " 'when the defrauded party discovers or with reasonable diligence could have discovered the fraud' "). The running of the limitations periods on both claims is apparent on the face of the complaint because the plaintiffs obtained their loans in 2006, but commenced their action in 2009.

**[12]** The plaintiffs have not demonstrated a basis for equitable tolling of their claims. "We will apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. I.N.S.*,

272 F.3d 1176, 1193 (9th Cir. 2001) (internal quotation marks and alterations omitted). The plaintiffs suggest that their TILA claim should have been tolled because Almendarez and Maximo speak only Spanish, but received loan documents written in English. However, the plaintiffs have not alleged circumstances beyond their control that prevented them from seeking a translation of the loan documents that they signed and received. Thus, the plaintiffs have not stated a basis for equitable tolling. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (per curiam) (declining to toll TILA's statute of limitations when "nothing prevented [the mortgagor] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements").

**[13]** In addition, the plaintiffs have not demonstrated a basis for equitable estoppel. Equitable estoppel "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff 's claim is filed, to prevent the plaintiff from suing in time." *See Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (internal quotation marks omitted). The First Amended Complaint alleges only that the defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure." The plaintiffs, however, have failed to specify what true facts are at issue, or to establish that the alleged misrepresentation and concealment of facts is "above and beyond the wrongdoing" that forms the basis for their TILA and Arizona Consumer Fraud Act claims. *Guerrero*, 442 F.3d at 706.

**[14]** The district court therefore properly dismissed the plaintiffs' claims under both TILA and the Arizona Consumer Fraud Act as barred by a one-year statute of limitations. The plaintiffs did not add any new facts to the proposed Second Amended Complaint, and do not suggest any on appeal, that would support applying either equitable tolling or equitable estoppel to their claims. Thus, the district court also did not abuse its discretion by denying leave to amend.

## 5. Intentional Infliction of Emotional Distress

The plaintiffs contend that they sufficiently stated a claim for intentional infliction of emotional distress. When ruling on a motion to dismiss such a claim under Arizona law, a district court may determine whether the alleged conduct rises to the level of "extreme and outrageous." *See Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969), *overruled on other grounds by Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781 (Ariz. 1989).

**[15]** Here, the plaintiffs fail to meet that threshold. They allege that the lenders' "actions in targeting Plaintiffs for a loan, misrepresenting the terms and conditions of the loan, negotiating the loan, and closing the loan" were "extreme and outrageous because of the Plaintiffs' vulnerability" and "because the subject of the loan was each Plaintiff 's primary residence." This conduct, though arguably offensive if true, is not so outrageous as to go "beyond all possible bounds of decency." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1015 (Ariz. 1986) (en banc). The plaintiffs essentially allege that the lenders offered them loans that the lenders knew they could not repay; this is not inherently "extreme and outrageous." Moreover, the plaintiffs do not allege any additional support for their claim in their proposed Second Amended Complaint. Accordingly, the district court properly dismissed, without leave to amend, the plaintiffs' claim for intentional infliction of emotional distress.

## IV.

The district court properly dismissed the plaintiffs' First Amended Complaint without leave to amend. The plaintiffs' claims that focus on the operation of the MERS system ultimately fail because the plaintiffs have not shown that the alleged illegalities associated with the MERS system injured them or violated state law. As part of their fraud claim, the plaintiffs have not shown that they detrimentally relied upon

any misrepresentations about MERS's role in their loans. Further, even if we were to accept the plaintiffs' contention that MERS is a sham beneficiary and the note is split from the deed in the MERS system, it does not follow that any attempt to foreclose after the plaintiffs defaulted on their loans is necessarily "wrongful." The plaintiffs' claims against their original lenders fail because they have not stated a basis for equitable tolling or estoppel of the statutes of limitations on their TILA and Arizona Consumer Fraud Act claims, and have not identified extreme and outrageous conduct in support of their claim for intentional infliction of emotional distress.

Thus, we **AFFIRM** the decision of the district court.