MURDOCK, Justice.
Before us are two petitions for a writ of mandamus seeking review of orders denying motions to dismiss the actions based on the alleged lack of standing by the plaintiffs and, in turn, the alleged lack of subject-matter jurisdiction of the trial courts and seeking an order requiring the trial courts to grant the motions to dismiss. We have consolidated the petitions for the purpose of issuing one opinion, because the issues raised in the two petitions are identical.
*986 In case no. 1111567, U.S. Bank National Association (“U.S. Bank”), the defendant below, petitions this Court for a writ of mandamus requiring the Walker Circuit Court to dismiss an action filed by Walker County (“the County”) on behalf of a putative class of all Alabama counties similarly situated to Walker County in relation to U.S. Bank and seeking declaratory, injunc-tive, and monetary relief. In case no. 1111370, MERSCORP, Inc. (“MER-SCORP”), and Mortgage Electronic Registration Systems, Inc. (“MERS”) (hereinafter referred to collectively as “the MERS defendants”), petition this Court for a writ of mandamus requiring the Barbour Circuit Court to dismiss an action filed by Barbour Probate Judge Nancy 0. Robertson, in her official capacity, on behalf of a putative class of all probate judges in Alabama, also seeking declaratory, injunctive, and monetary relief. We deny the petitions.

I. Facts and Procedural History

The general factual background required to understand the nature of the actions brought by the County and by Judge Robertson is the same. At issue is a particular aspect of the mortgage-securi-tization process. The process begins when a borrower secures a note to pay a lender by executing a mortgage on the real property the borrower, or mortgagor, purchases with the loan from the lender, or mortgagee. The mortgage is recorded in the probate office of the county in which the property is located. See §§ 35-4-50, 35-4-51, 35^-62, 35-4-90, Ala.Code 1975 (“the recording statutes”).[1] Loans between borrowers and lenders compose the primary mortgage market.
The note associated with the mortgage is a negotiable instrument, however, under Article 3 of the Uniform Commercial Code, and as such it can be bought and sold. When loans between borrowers and lenders are pooled and sold on the secondary mortgage market, investors benefit by receiving a low-risk investment and borrowers benefit by receiving loans at lower interest rates. Such is the process of sec-uritization.
“The process of ‘securitization’ can be described as the process of distributing risk by aggregating debt instruments in a pool, then issuing new securities backed by the entire pool. This reduces the risk of investors’ loss from default on any one debt instrument. For mortgage loans, investment banks take pools of real property loans and then use the cash flows from the loan payments to pay the bondholders secured by the un *987 derlying mortgage loans. In the residential context, the process of securitization can be boiled down to the pooling of various residential mortgage loans and issuing securities backed by the mortgage loans.
“The general process of creating a residential mortgage-backed securitization (RMBS) is to first have a lender or lenders originate various mortgage loans to borrowers. Next, the originating lenders transfer these loans to a freestanding entity, known generally as a SPV, specifically created for the securiti-zation. As an independent entity, the SPV is protected from any bankruptcy or insolvency proceedings of the originating lender. The SPV aggregates the mortgage loans into pools and issues securities to investors, with the proceeds from the securities being used to pay the originating lender for selling the loans. Thereafter, the investors of these securities receive the proceeds from, and the credit risks of, the mortgage loans in the underlying pool. In many cases, the originating lender will continue to collect the loan payments from the borrowers as they become due and will simply pass the collected monies onto the investors. The investors are protected, by the laws governing assignments, from certain origination and servicing risks assumed by the originating lenders and servicers, and therefore the investors can accept a lower interest rate and yield on the loans.”
Derrick M. Land, Residential Mortgage Securitization and Consumer Welfare, 61 Consumer Fin. L.Q. Rep. 208, 209 (2007) (footnotes omitted).
The rights and obligations of the parties in the above-described securitization process typically are set forth in a pooling and servicing agreement (“PSA”). The PSA also explains the role of the trustee that holds the residential mortgage-backed securities (“RMBS”). U.S. Bank is a trustee for certain RMBS trusts that hold, among others, loans on the secondary mortgage market secured by mortgages on real property in the County.
Although the development of the secondary mortgage market benefited both investors and mortgagors, the “recording process became cumbersome to the mortgage industry, particularly as the trading of loans increased.” Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir.2011). This is where MER-SCORP and MERS entered the process. MERS was created to streamline the mortgage process through the use of electronic documentation. “MERS is a private electronic database, operated by MER-SCORP, Inc., that tracks the transfer of the ‘beneficial interest’ in home loans, as well as any changes in loan servicers.” Cervantes, 656 F.3d at 1038. “Officially launched in 1997, [MERS] is a corporation owned by its members who are typically also users of the MERS system. It is funded by membership and transaction fees that members pay for use of the system.” Robert E. Dordan, Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for A Peaceful Existence, 12 Loy. J. Pub. Int. L. 177, 181 (2010). “MERS does not solicit, fund, service, or actually own any mortgage loans.” Christopher L. Peterson, Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System, 78 U. Cin. L.Rev. 1359, 1361 (2010). Instead, when a mortgage is executed, the borrower and the lender designate MERS as mortgagee “acting solely as nominee for the Lender and Lender’s successors and assigns.” “The loan is then assigned to a seller for repackaging through securitization for investors. Instead of recording the assignment to the seller or the trust that will *988 ultimately own the loan, however, the originator pays MERS a fee to record an assignment to MERS in the county records.” Peterson, 78 U. Cin. L.Rev. at 1370.[2] “The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record.” Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 490 (Minn.2009). Thus, “[t]he MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans [on the secondary market] without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located.” Id.
Judge Robertson filed her action in her official capacity as probate judge on November 22, 2011, in the Barbour Circuit Court against MERSCORP and MERS. The complaint sought class-action status on behalf of “all Probate Judges of the State of Alabama” because the MERS defendants allegedly “systematically obstruct Ala.Code §§ 35-4-50, 35-4-51, and 35-4-62,” and allegedly interfere with the duty of all probate judges to keep records of “conveyances of real property” as required by § 12-13-43, Ala.Code 1975. The complaint alleges that “[t]he [MERS] Defendants, to profit their shareholders and customers, operate to circumvent the laws of Alabama which prescribe the recording of interests in real estate inclusive of conveyances and grants of such interests. The circumvention obstructs such laws, preventing their fulfillment.” Judge Robertson sought a judgment declaring that the MERS defendants’ conduct is “an obstruction to Alabama law,” a permanent injunction prohibiting the MERS defendants from engaging in their allegedly illegal conduct and requiring them to comply with Alabama’s recording statutes, “a thorough and fully accurate accounting to [Judge Robertson] and Class of all interests in real estate that have been transferred to and within the MERS system within the last ten (10) years,” and reimbursement to “the Probate Courts of Alabama for the recording fees which would have been paid but for the [MERS] Defendants’ obstruction and circumvention of Alabama law.”
On May 11, 2012, the MERS defendants filed an amended motion to dismiss the complaint.[3] The MERS defendants argued, among other things, that Judge Robertson lacked standing to bring a private cause of action under the recording statutes. Judge Robertson filed a response in opposition to the motion to dismiss. The Barbour Circuit Court conducted a hearing on the motion on June 25, 2012. On July 10, 2012, the Barbour Circuit Court denied the MERS defendants’ motion to dismiss *989 the complaint.[4] On July 19, 2012, the MERS defendants petitioned this Court concerning the circuit court’s denial of their motion to dismiss the complaint.
The County filed its action on March 21, 2012, in the Walker Circuit Court against U.S. Bank. The complaint sought
“to certify a Class of all Alabama counties with mortgages recorded in their offices of judge of probate that designate MERS as ‘nominee’; that are attached to notes deposited in RMBS trusts administered by Defendant U.S. National Bank, as Trustee; and that lack all recorded mortgage assignments from the originating lender to the depositor to the trust.”
The complaint alleged that U.S. Bank
“did not record, or cause to be recorded, certain mortgage assignments at the time the trusts were created, nor did it pay the accompanying fees, which are preconditions for enjoying the enumerated benefits. Rather, U.S. Bank merely transferred notes to the trusts it administered and recorded the change in note ownership only in the records of Mortgage Electronic Registration Systems, Inc. (‘MERS’), a private corporation created for the express purpose of circumventing the payment of mortgage assignment fees to county governments.
[[Image here]]
“U.S. Bank failed to use the County’s recording services for the assignments necessary for the securitization, yet it represented to the public and to RMBS investors that the RMBS trusts had the benefit of perfected mortgages, a benefit that could only be obtained by using the County’s services for recording assignment.”
The County sought to recover damages based on unjust enrichment because, it argues, U.S. Bank “received the benefits of recording its mortgages” without paying the County for those benefits. Those benefits included “the ability to represent that all rights to mortgage loans had been deposited in the trust, free and clear of any encumbrance.” The County also sought a judgment declaring that “notes deposited in RMBS trusts are unperfected when the mortgages in the Counties’ offices of judge of probate list an originating lender, with MERS as nominee” and mortgage assignments are not recorded in the probate office of the county in which the mortgaged property is located. It also sought a declaration “establishing that MERS, and U.S. Bank-administered trusts receiving assignments from MERS, were not the parties in interest to prosecute foreclosures for notes in RMBS trusts administered by U.S. Bank as Trustee.” Finally, the County requested on behalf of itself and the putative class “a mandatory injunction requiring that [U.S. Bank] record all prior assignments from the originating lender to the depositor to the trust, and pay the associated recording fees, in order to clear title to properties in the Counties.”
U.S. Bank filed a motion to dismiss the County’s complaint on May 25, 2012, arguing, among other things, that the County lacked standing because “[t]he recording law does not authorize a cause of action to compel the recording of conveyances of interest in land.” (Emphasis added.) The County filed its opposition on August 2, 2012, and the Walker Circuit Court held a hearing on the motion on August 7, 2012. On August 27, 2012, the Walker Circuit Court denied U.S. Bank’s motion to dismiss the complaint. On September 10, *990 2012, the County filed a first amended complaint in which it added Walker County Probate Judge Rick Allison as a plaintiff to the action. On September 11, 2012, U.S. Bank filed its petition for the writ of mandamus with this Court.

II. Standard of Review

“ ‘ “The writ of mandamus is a drastic and extraordinary writ, to be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995).” Ex parte Carter, [807 So.2d 534,] 536 [(Ala.2001) ].’
“Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001).
“ ‘Subject to certain narrow exceptions ..., we have held that, because an “adequate remedy” exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.’ Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala.2002).”
Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 965-66 (Ala.2011).

III. Analysis

A. The Parties’ Primary Arguments

As the standard of review indicates, we do not ordinarily entertain mandamus petitions concerning the denial of a motion to dismiss. One of the few “narrow exceptions” we have carved out of this general rule is when the motion denied by the trial court is one that challenged that court’s subject-matter jurisdiction, as in the case in which a motion to dismiss raises a question of “standing.” E.g., Ex parte Health-South Corp., 974 So.2d 288, 292 (Ala.2007). The petitioners argue for the benefit of this exception in the present cases based on the fact that their motions framed the issues presented as “standing” issues and, thus, as subject-matter-jurisdiction issues.
The manner in which the MERS defendants argue that Judge Robertson lacks “standing” is telling. To begin, they state that Judge Robertson “does not and cannot allege an injury in fact causally connected to a failure to record conveyances and grants of interests in real estate with the Probate Court.” (Emphasis added.) This is so, they say, first because “the law imposes no duty to record conveyances and grants of interests in real estate in the public land records” (emphasis added), and second because “Judge Robertson is not (and is not alleged in the Complaint to be) a purchaser or encumbrancer of land whom Alabama’s recording statutes are solely designed to protect.” In short, the MERS defendants assert,
“[njothing in the plain language of these statutes indicates that the Legislature intended to create a private right of action allowing a probate judge to seek damages or otherwise enforce the statutes, much less a right of action to recover fees which the probate judge was never entitled to impose or collect, in connection with instruments that are not alleged to have been recorded.”
(Emphasis added.)
Among other things, Judge Robertson responds to this argument by stating that she has standing because the MERS defendants’ failure to record the subject conveyances deprived Barbour County of recording fees to which it was entitled by statute. See § 12-19-90, Ala.Code 1975. Judge Robertson contends that she has an *991 interest in those fees in her official capacity and, thus, that, when those fees are not collected, both she and Barbour County suffer an injury.[5]
The MERS defendants respond to Judge Robertson’s protestations of standing by reiterating that the recording statutes provide only that interests in real property “can” or “may” be recorded to protect against future purchasers and encumbrances, i.e., in order for a security interest to be perfected, but that unrecorded conveyances and grants of interest in real estate are nonetheless perfectly valid. They also contend that Judge Robertson’s statutory duties of recording apply only when an instrument is submitted to the probate office for recording; the statutes, they say, do not and cannot fault her for failing to record transactions that have not been submitted to her office.
U.S. Bank’s primary argument is similar to that of the MERS defendants. It contends that “Alabama courts ... have repeatedly stressed that there is no duty to record, that unrecorded interests are valid as between the parties, and that the only ‘penalty* for not recording is that one fore-goes [sic] the protections of the recording laws.” (Emphasis added.) U.S. Bank concludes that, “[wjithout a duty to record, there can be no standing to assert a claim based on an alleged failure to record.” (Emphasis added.) In addition, U.S. Bank contends that “the law is clear that the Judge of Probate ... cannot collect fees for services that are neither rendered nor required. The Judge of Probate can only collect fees ‘for service[s] provided by the probate offices.’ Ala.Code [1975,] § 12-19-90.... ” U.S. Bank reasons that the probate judge therefore has no interest in fees that are not collected for unrecorded assignments.
Among other things, the County contends that, “but for [U.S. Bank’s] use of MERS, [the County] would have received mortgage assignment fees in the securiti-zation process and, thus, it alleged a com-pensable financial injury.” The County takes the position that Alabama’s recording statutes contain mandatory language that requires the recording of real-property ownership transfers. The County also contends it has been injured because, it says, U.S. Bank’s “conduct has obscured [the County’s] priority rights as a tax lien creditor and code violation creditor, thereby causing injury.”
In its reply, U.S. Bank reiterates that “[b]ecause there is no duty to record assignments under well-established Alabama law, the county does not allege an injury-in-fact causally connected to a failure to record.” (Emphasis added.) It also restates that even if recording was mandatory for all promissory-note assignments under Alabama law, no evidence suggests a legislative intent to allow a private cause of action to enforce that mandate.

B. Standing and Failure to State a Claim

We will not address whether the petitioners’ arguments related above as to what is and what is not required by Alabama’s recording statutes are correct. The questions raised by these arguments concern whether the legal theories asserted by the plaintiffs are recognized by Alabama law; they are not questions of the plaintiffs’ “standing” to assert and attempt to prove those legal theories in our courts. In fact, the petitions before us constitute *992 further examples of the understandable, but repeated, confusion in our jurisprudence between the issues of standing and of the failure to state, or prove, a cognizable claim. The United States Supreme Court itself has acknowledged that “the question whether a plaintiff states a claim for relief ‘goes to the merits’ in the typical case, not the justiciability of a dispute, ... and conflation of the two concepts can cause confusion.” Bond v. United States, — U.S. -, -, 131 S.Ct. 2355, 2362, 180 L.Ed.2d 269 (2011); see also 13A Charles Alan Wright, Arthur K. Miller & Edward H. Cooper, Federal Practice & Procedure § 3531 (3d ed. 2008) (noting that “[t]he question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms”).
This Court similarly has explained that
“the focus of an inquiry into standing is not on the viability of the legal theory asserted; rather, the focus is on whether the plaintiff is the ‘proper part[y] to bring the action.’ If the legal theory itself is not a viable one under applicable law, that is a different question. The question whether the right asserted hy [the plaintiff] is an enforceable one in the first place, i.e., whether [the plaintiff] has seized upon a legal theory our law accepts, is a cause-of-action issue, not a standing issue.”
Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1220 (Ala.2010) (emphasis added).
The MERS defendants argue that “the law imposes no duty” on them to record all assignments and transfers of notes attached to mortgages on real property. They expressly assert that the plaintiffs do not have a legislatively created “private right of action.” These arguments, however, go to the viability of the plaintiffs’ legal theories, not an issue of “standing” to assert those theories.
To like effect are U.S. Bank’s arguments. Put simply, U.S. Bank’s position is that the recording statutes do not impose a duty to record loan assignments and transfers and, therefore, that the probate judges cannot complain of the failure to record such assignments and transfers. Clearly, this is an argument that challenges the plaintiffs’ interpretation of the recording statutes and, thus, the viability of the plaintiffs’ legal theory under Alabama law.
We previously have observed that “our courts too often have fallen into the trap of treating as an issue of ‘standing’ that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action.” Wyeth, 42 So.3d at 1219. See also Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89 (Ala.2010) (quoting and relying upon Wyeth for the above-stated principle); Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d at 979 (quoting at length from Wyeth with approval). In Ex parte BAC Home Loans Servicing, LP, [Ms. 1110373, September 13, 2013] — So.3d-(Ala.2013), this Court recently rejected the notion that questions, not unlike those raised here, regarding the cog-nizability of the plaintiffs’ legal theories, or claims, are “standing” issues rather than “cause of action” issues. We again reject that notion. Accordingly, the efforts to frame the questions before us as questions of standing and to thereby implicate the subject-matter jurisdiction of the trial courts must fail.

IV. Conclusion

For the reasons explained above, these cases do not fall within the subject-matter-jurisdiction exception to our general rule that we will not engage in mandamus review of a trial court’s denial of a motion to *993 dismiss. We therefore deny the request for mandamus relief in both of the cases before us.
1111370 — PETITION DENIED.
1111567 — PETITION DENIED.
MOORE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.

. Section 35-4-50, Ala.Code 1975, provides:
"Conveyances of property, required by law to be recorded, must be recorded in the office of the judge of probate.” Section 35-4-51, Ala. Code 1975, provides:
"Except as may be otherwise provided by the Uniform Commercial Code, all deeds, mortgages, deeds of trust, bills of sale, contracts or other documents purporting to convey any right, title, easement, or interest in any real estate or personal property and all assignments of mortgages, deeds of trust or other securities for debt or extension agreements with respect thereto, when executed in accordance with law, shall be admitted to record in the office of the probate judge of any county. Their filing for registration shall constitute notice of their contents.”
Section 35-4-62(a), Ala.Code 1975, provides:
"Conveyances of real property shall be recorded in the county in which the property is situated.” Section 35-4-90(a), Ala.Code 1975, provides:
"(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.”

. A "quirk of MERS is that.... much of what is done in the name of MERS is in reality being done by the staff of member banks, but in their capacity as officers of MERS.” Dor-dan, 12 Loy. J. Pub. Int. L. at 182. This is because
"MERS instructs its members to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS. This procedure allows the member that owns the indebtedness to assign or foreclose the mortgage loan in the name of MERS, eliminating the need to either work through a third party or to execute an assignment of the security instrument from MERS back to the member.”
Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 491 (Minn.2009).

. The MERS defendants’ first motion to dismiss was filed in federal court when the action had been removed to that court, but the motion was not ruled upon before the action was remanded to the Barbour Circuit Court.

. The circuit court also entered a separate order concerning discovery matters, but that order is not before us.

. Judge Robertson also answers that she has standing because the MERS defendants’ "systematic” circumvention and obstruction of the recording statutes interferes with her duties under those statutes. See § 12-13-43, Ala.Code 1975; see also §§ 45-3-84.116, 43-3-84.90, and 45-3-84.91 (local statutes requiring the collection of recording fees).