NOT FOR PUBLICATION

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

APR 19 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JUSTIN HART, | No.   23-15858 |
| Plaintiff-Appellant, | D.C. No. 3:22-cv-00737-CRB |
| v. | |
| FACEBOOK, INC.; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted February 21, 2024
University of Pacific, McGeorge School of Law
Sacramento, California

Before:  RAWLINSON and CALLAHAN, Circuit Judges, and ENGLAND,**
District Judge.
Concurrence by Judge RAWLINSON.

Justin Hart sued Facebook, Twitter (now X Corporation), and certain federal

officials ("the Federal Defendants") alleging that in 2020 and 2021, Facebook and

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Morrison C. England, Jr., Senior United States District
Judge for the Eastern District of California, sitting by designation.

Twitter, acting in concert with the Federal Defendants, flagged his posts as misinformation about COVID-19 and suspended or moderated his accounts. Hart claims this violated his right to free speech under the First Amendment. The district court dismissed Hart's case against the private defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and against the Federal Defendants under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. *Hart v. Facebook*, 2022 WL 1427507 (N.D. Cal. 2022). The district court then denied Hart's motion to amend and entered a final judgment.[1] *Hart v.* Facebook, 2023 WL 3362592 (N.D. Cal. 2023). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** We review de novo a dismissal for failure to state a claim pursuant to Rule 12(b)(6). *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040–41 (9th Cir. 2011). A complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper when the complaint does not make out a cognizable legal

---

[1] The district court denied Hart's motion to amend on the ground of futility finding that his proposed new allegations, like the allegations in the initial complaint, failed to plausibly allege state action. We review such a denial de novo to determine if it is clear that the complaint would not be saved by amendment. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010). We agree with the district court that Hart's proposed amended complaint fails to state a plausible claim for the same reasons his original complaint failed. Accordingly, while we have considered Hart's proposed amended complaint, our de novo review focuses on the reasons behind the orders of dismissal.

2

theory or does not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint that alleges only "labels and conclusions" or a "formulaic recitation of the elements of the cause of action" will not survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As private companies, Twitter and Facebook are not subject to the Constitution's constraints. *O'Handley v. Weber*, 62 F.4th 1145, 1155 (9th Cir. 2023); *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 995–99 (9th Cir. 2020). Both assert that they acted pursuant to their own policies in moderating Hart's accounts. Nonetheless, there are "exceptional cases in which a private entity will be treated as a state actor." *O'Handley*, 62 F.4th at 1155. To determine whether a private entity will be treated as a state actor for constitutional purpose we apply the two-step framework developed in *Lugar v. Edmonson Oil Co. Inc.*, 457 U.S. 922 (1982). *O'Handley*, 62 F.4th at 1156. We first ask "whether the alleged constitutional violation was caused by the 'exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,'" and "[i]f the answer is yes, we then ask whether 'the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" *Id*. (quoting *Lugar*, 457 U.S. at 937).

The Supreme Court has developed four different tests to assist us in

3

identifying state action by a private person. *Pasadena Republican Club v. W. Just. Center*, 985 F.3d 1161, 1167 (9th Cir. 2021). We read Hart's briefs as only asserting that Facebook and Twitter engaged in state action under the joint action theory.[2]

In *O'Handley*, we held that the claim faltered at the first step of *Lugar*'s two-step framework because "Twitter did not exercise a state-created right when it limited access to O'Handley's posts or suspended this account." 62 F.4th at 1156. Rather, its "right to take those actions when enforcing its content-moderation policy was derived from its user agreement with O'Handley, not from any right conferred by the State." *Id*. Hart's claims similarly falter as Facebook and Twitter's rights to moderate his posts arise from their user agreements with Hart, not from any right conferred by the federal government.

"A plaintiff can show joint action either 'by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.'" *O'Handley*, 62 F.4th at 1159 (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)).[3] To prevail on a claim

---

[2]  We recognize that a case raising similar questions of government influence on social media companies is before the Supreme Court. *See Murthy v. Missouri*, 144 S. Ct. 7 (2023). We agree with the parties that we need not stay consideration of this appeal pending the Supreme Court's decision in *Murthy*.

[3]  Hart does not allege the existence of a conspiracy.

of joint action, a "complaining party must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Blum v. Yretsky*, 457 U.S. 991, 1004 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 351 (1974)). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id*.

We used the term "willful participant in joint action" in *Tsao*, F.3d at 1140, but explained "[u]ltimately, joint action exists when the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Id*. (cleaned up). We further explained in *O'Handley* that "joint action is present when the State 'significantly involves itself in the private parties' action and decisionmaking' in a 'complex and deeply intertwined process.'" 62 F.4th at 1159 (quoting *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 753 (9th Cir. 2020)). We noted that "[t]he test is intentionally demanding and requires a high degree of cooperation between private parties and state officials to rise to the level of state action." *Id*. at 1159–60.

Hart has not shown that the Federal Defendants are *responsible* for Facebook and Twitter's moderation of his posts. In *O'Handley* we found no

plausible inference of entwinement, noting:

> The only alleged interactions are communications between the OEC and Twitter in which the OEC flagged for Twitter's review posts that potentially violated the company's content-moderation policy. The fact that the OEC engaged in these communications on a repeated basis through the Partner Support Portal does not alter the equation, especially because O'Handley alleges only one such communication regarding him.

*Id.* at 1160. Before us, Hart cites only ten interactions between the federal officials and Facebook and Twitter over a period of five months. Hart was not a subject of any of the interactions, only five of the interactions were initiated by the Federal Defendants, and none of the interactions suggest that the federal officials were attempting to become significantly involved in Facebook and Twitter's actions. Rather, the interactions show that the federal officials sought to inform Facebook and Twitter of what the government considered to be misinformation about COVID-19. In *O'Handley*, we held that this type of "consulting and information sharing" does not rise to the level of joint action. *Id.* Hart has not made a plausible claim of joint action.

**2.** We review de novo the dismissal of the Federal Defendants for lack of standing. *Confederated Tribes and Bands of the Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 988 (9th Cir. 2020). To establish Article III standing to sue, a plaintiff must demonstrate that he "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

6

redressed by a favorable judicial decision.'" *O'Handley*, 62 F.4th at 1161 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Even assuming that Hart has shown injury and can meet a lenient definition of traceability, his injury is not redressable because he has not shown that the Federal Defendants were responsible for Twitter and Facebook's actions. Both companies assert that they moderated Hart's accounts pursuant to their own policies. Because Hart has not plausibly alleged that Twitter and Facebook acted at the behest of the Federal Defendants— as opposed to pursuant to their own policies—he has not shown that a favorable judicial decision against the Federal Defendants would provide him any relief. The district court did not err in dismissing Hart's action against the Federal Defendants for lack of standing.

**3.** Finally, Hart asserts that the district court erred in entering judgment in favor of the Federal Defendants in light of his Freedom of Information Act ("FOIA") claim. But Hart stipulated in the district court that he did not intend to challenge the completeness of the federal officials' response to his FOIA request or challenge the redactions made pursuant to the privileges claimed. The district court, relying on the stipulation, vacated the case management deadlines and the case management conference. Hart has not shown that any concerns he may have had as to the response to his FOIA request survive the stipulation and order.

The district court's dismissal of Hart's action is **AFFIRMED**.



*Hart v. Facebook, Inc.*, Case No. 23-15858
**Rawlinson, Circuit Judge, concurring in the result:**

I concur in the result.