**Maria Elena G. NICDAO, Plaintiff,**

v.

**CHASE HOME FINANCE, Defendant.**

Case No. 3:10–cv–00192–TMB.

United States District Court,
D. Alaska.

March 13, 2012.

Maria Elena G. Nicdao, Anchorage, AK, pro se.

David M. Hymas, Davis Wright Tremaine LLP, Anchorage, AK, Frederick B. Burnside, Davis Wright Tremaine LLP, Seattle, WA, for Defendant.

## ORDER

TIMOTHY M. BURGESS, District Judge.

This is an action by Plaintiff Maria Elena G. Nicdao, proceeding pro se, against Defendant Chase Home Finance ("Chase") for "wrongful foreclosure, improper legal paper work and improper loan modification/forbearance implementation."[1] Chase has moved for judgment on the pleadings.[2] Plaintiff opposes the motion.[3] For the reasons discussed below, Chase's motion is GRANTED.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed this action on August 27, 2010.[4] In an initial order directing Plaintiff to serve her original Complaint, the Court asserted that "liberally construed" it "may state a cause of action."[5] In a footnote, the Court also stated: "The court finds that Ms. Nicdao's complaint meets the plausibility criteria set forth in *Ashcroft v. Iqbal*, [556 U.S. 662] 129 S.Ct. 1937, 1949–50 [173 L.Ed.2d 868] (2009)."[6]

After having an additional opportunity to review Plaintiff's Complaint, on May 20, 2011, the Court sua sponte dismissed the action without prejudice for failure to demonstrate that subject matter jurisdiction exists.[7] The Court also observed that Plaintiff's Complaint did "not specify a cause of action[.]"[8] As permitted by the Court's Order, Plaintiff subsequently filed an Amended Complaint.[9]

### B. Plaintiff's Amended Complaint

In her Amended Complaint, which resembles a brief more than a pleading, Plaintiff accuses Chase of "engag[ing] in illegal, unconscionable mortgage banking practices which caused the Plaintiff irreparable damage."[10] She states that in September of 2008, she recognized that she could no longer pay the mortgage for her condominium on Sentry Drive in Anchorage (the "Condominium") at its current rate.[11] Accordingly, she applied to Chase for a loan modification to reduce her month payments.[12]

Nonetheless, she states that Chase posted a "Notice of Default" on the Condominium on January 7, 2009, and scheduled a sale of the property for April 9, 2009.[13] She alleges that thereafter, Chase gave her three different forbearance plan monthly payment quotations.[14] She contends that she began paying $948 per month as part of a forbearance plan, but that she continued to receive foreclosure notices throughout 2009 and 2010, despite providing additional loan modification doc-

---

1. Dkt. 30 at 2.

2. Dkt. 32.

3. Dkt. 47.

4. Dkt. 1.

5. Dkt. 5 at 1.

6. *Id.*

7. Dkt. 29.

8. *Id.* at 1.

9. Dkt. 30. In her Amended Complaint, Plaintiff alleges that the Court has diversity jurisdiction. *Id.* at 2. Chase agrees that Plaintiff has adequately pleaded diversity jurisdiction. Dkt. 32 at 14 n. 6.

10. Dkt. 30.

11. *Id.* at 3–4.

12. *Id.*

13. *Id.*

14. *Id.* at 7–8.

uments required by Chase.[15] She further contends that she received a call from Chase on August 23, 2010, where a representative informed her that she did not qualify for a loan modification, and accordingly, had "to pay $17,179.06 ASAP or she would be foreclosed on."[16]

Plaintiff purportedly asserts "cause[s] of action" for "wrongful foreclosure, improper legal paperwork and improper loan modification/forbearance implementation."[17] She alleges that Mortgage Electronic Registration Systems, Inc. ("MERS") was involved as the original lender's nominee on her mortgage transaction.[18] She contends that because of MERS's involvement in the transaction, that the deed of trust was separated from the promissory note rendering any attempts to foreclose on her Condominium "null and void."[19] She also suggests that any foreclosure would be impermissible due to "improper legal paperwork" because the January 9th "Notice of Default" indicated that the trustee is Alaska Trustee LLC ("Alaska Trustee") instead of U.S. Bank National Association ("U.S. Bank").[20] She claims that Chase's conduct "led to the unjustified reporting of derogatory items to the credit bureaus adversely affecting" her credit score, and eventually costing her $261,100 in lost income when she failed to qualify for a performance bond necessary for her mortgage broker licensing.[21]

### C. Plaintiff's Opposition Brief

In her opposition brief, Plaintiff states that she "thought that the time to present her evidence-backed causes of action was during the Brief-filing stage" and thus indicates that she is providing "her causes of action," legal and other authorities, and "official documents received from Chase...."[22] She then appears to attempt to allege claims under the following "causes of action": wrongful foreclosure, fraud, quasi contract, "Non–Real–Party–In–Interest Servicers Cannot Foreclose," "Estoppel and Waiver," promissory estoppel, and quiet title.[23] In a "Prayer for Relief" she then asks for "a declaration or the rights and duties of the parties, specifically that the Defendant's past and future attempts to foreclose on the Subject Property are wrongful," a permanent restraining order precluding Chase "from ever again initiating any foreclosure action" on the Condominium, an order enjoining Chase and various affiliated persons and entities "from committing acts of fraud," an order enjoining Chase and those same persons and entities "from violating the Alaska Unfair and Deceptive Business Practices and Consumer Protection Act," an order enjoining Chase "from not keeping their promises to their clients, thus preventing them from committing acts of promissory estoppel," "to quiet title in favor of Plaintiff" against Chase, and for various amounts in compensatory damages, punitive damages, civil penalties, and restitution.[24]

### D. Documents Submitted by the Parties

In support of its motion, Chase submitted a number of documents that it

15. *Id.* at 8–10.
16. *Id.* at 10.
17. *Id.* at 2.
18. *Id.* at 5–6.
19. *Id.*
20. *Id.* at 6–7.
21. *Id.* at 11–12.
22. *Id.* at 15–16.
23. *Id.* at 17–38.
24. *Id.* at 38–40.

contends the Court may consider in connection with its motion. The documents include the mortgage promissory note signed by Plaintiff (the "Note"),[25] the deed of trust executed by Plaintiff (the "Deed of Trust"),[26] a "Hardship Letter" from Plaintiff to Chase requesting a loan modification,[27] a "Forbearance Plan Agreement" sent by Chase and executed by Plaintiff (the "Forbearance Plan"),[28] a "Request for Modification and Affidavit" filled out by Plaintiff (the "HAMP Application"),[29] several notices from Alaska Trustee requesting postponement of the foreclosure sale of the Condominium dated in late 2009 and early 2010, a "Notice of Default under Deed of Trust" executed by Alaska Trustee and "Substitution of Trustee" form from the records of the Anchorage Recording District,[30] and several documents filed in Plaintiff's bankruptcy proceeding.[31] Plaintiff also submitted several of these documents with her opposition, as well printouts from websites, other documents from her bankruptcy proceeding, legal authorities, and handwritten notes.[32]

These documents show that the Note, dated December 27, 2004, was payable to BNC Mortgage, Inc. ("BNC").[33] BNC endorsed the Note in blank.[34] The Deed of Trust, also dated December 27, 2004, lists Plaintiff as the borrower, BNC as the lender, MERS as the lender's nominee, and McKinley Title and Trust ("McKinley") as the trustee.[35] On January 2, 2008, BNC, acting through MERS, assigned its interest in the Deed of Trust to U.S. Bank.[36] On December 17, 2008, Chase, acting as the servicer for U.S. Bank, substituted Alaska Trustee as the trustee on the Deed of Trust.[37]

The documents further indicate that Plaintiff contacted Chase on July 21, 2009, seeking a loan modification under the Home Affordable Mortgage Plan ("HAMP") program.[38] Chase then sent Plaintiff the Forbearance Plan, which she signed on October 25, 2009.[39] Under the Forbearance Plan, Chase agreed to accept reduced payments in November, December, and January, while exploring "workout options."[40] Plaintiff agreed to provide financial information and payments of $948 for each of the three months.[41] It further explains that: "After the final payment of the Forbearance Plan, regular payments will become due in addition to any delinquent payments, fees and/or charges. If your account is not current once the Forbearance period has ended, collection and/or foreclosure activity will resume."[42]

25. Dkt. 34 Ex. A.

26. Dkt. 34 Ex. B.

27. Dkt. 34 Ex. C.

28. Dkt. 34 Exs. D–E.

29. Dkt. 34 Ex. F.

30. Dkt. 32 Ex. A.

31. Dkt. 32 Exs. B–D.

32. Dkt. 47.

33. Dkt. 34 Ex. A.

34. *Id.* at 4.

35. Dkt. 34 Ex. B at 1–2.

36. Dkt. 47–15 at 2.

37. Dkt. 47–14 at 2.

38. Dkt. 34 Ex. C.

39. Dkt. 34 Exs. D–E.

40. Dkt. 34 Ex. D at 1–3.

41. *Id.* at 1.

42. *Id.* at 2.

It also states that the Forbearance Plan will not affect "any reporting made to credit reporting agencies." [43]

Plaintiff completed a HAMP Application on March 25, 2010.[44] In it, Plaintiff indicated that the Condominium was a "Second Home" and listed her mailing address as a different address than the Condominium.[45] She acknowledged that Chase would "use the information in this document to evaluate [her] eligibility for a loan modification" but that Chase was "not obligated to offer [her] assistance based solely on the statements in this document." [46] Plaintiff further acknowledged that she might continue to receive "legal notices related to foreclosure" and that foreclosure "may be immediately resumed from the point at which it was suspended if I fail to comply with the terms and conditions of" HAMP.[47] The application also states that if Chase accepts any payments during the evaluation period, it will not waive the "loan or any foreclosure action and related activities and shall not constitute a cure of any default under the loan documents evidencing and securing the loan unless such payments are sufficient to completely cure [Plaintiff's] entire default under the loan

documents." [48] Plaintiff further certified that the Condominium was "owner-occupied" and that she "intend[ed] to reside in th[e] property for the next twelve months...." [49] In her bankruptcy filings, Plaintiff indicated that she was renting the Condominium to her son.[50]

## II. LEGAL STANDARD

### A. Failure to State a Claim

■■■ Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are generally evaluated under the relevant Rule 12(b) standard, depending on the basis for the motion.[51] Here, that would be Rule 12(b)(6), for failure to state a claim upon which relief may be granted.[52] A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." [53] Notably, pro se complaints, must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers...." [54] When considering a motion to dismiss evaluating the sufficiency of a complaint under Rule 12(b)(6), courts generally assume that all

**43.** *Id.* at 3.

**44.** Dkt. 34 Ex. F at 4.

**45.** *Id.* at 1.

**46.** *Id.* at 3.

**47.** *Id.*

**48.** *Id.*

**49.** *Id.* at 3.

**50.** Dkt. 33 Ex. D at 16.

**51.** *See* 5C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1367 (3d ed. Supp. 2010) (noting that where Rule 12(h)(2) or 12(h)(3) procedural defects are raised through a Rule 12(c) motion, "presumably the district court will apply the same

standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), (6), or (7) or under Rule 12(f)"); *see also, e.g., Pac. W. Group, Inc. v. Real Time Solutions, Inc.,* 321 Fed.Appx. 566, 569 (9th Cir.2008) (citing *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989)).

**52.** Fed.R.Civ.P. 12(h)(2) ("Failure to state a claim upon which relief can be granted ... may be raised ... by a motion under Rule 12(c)").

**53.** Fed.R.Civ.P. 8(a)(1).

**54.** *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

allegations in the complaint are true, even if doubtful in fact.[55]

In order to survive a motion to dismiss, a complaint must include "[f]actual allegations [that are] enough to raise a right to relief above the speculative level."[56] In order to do so, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[57] "[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[58] In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," courts may disregard "[t]hreadbare" legal conclusions.[59] Then courts should determine whether the well-pleaded allegations "plausibly establish" the claims or whether they fail in light of "more likely explanations."[60] "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."[61] However, a plaintiff need not plead "all facts necessary to carry" his or her burden.[62] "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[63]

## B. Leave to Amend

 Under Rule 15, after the time for amending a pleading "as a matter of course" expires but before trial, a party may amend its pleading with the court's leave.[64] Courts "should freely give leave when justice so requires."[65] Thus, the Rule 15 standard is "applied with extreme liberality."[66] Although there is a "strong public policy" favoring amendment, leave to amend may be denied upon consideration of the following factors: "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended [its] pleadings."[67] There is a presumption in favor of granting leave to amend absent prejudice or a strong showing on one of the other factors.[68]

**55.** *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**56.** *Id.*

**57.** *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955).

**58.** *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir.2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

**59.** *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

**60.** *Id.* at 1949, 1951.

**61.** *A.E.*, 666 F.3d at 637 (quoting *Starr*, 652 F.3d at 1216).

**62.** *Al–Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir.2009), *rev'd on other grounds* —— U.S. ——, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

**63.** *Iqbal*, 129 S.Ct. at 1950 (citation omitted).

**64.** Fed.R.Civ.P. 15(a)(2).

**65.** *Id.*

**66.** *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.2003) (citations omitted).

**67.** *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995) (citations omitted).

**68.** *Aspeon*, 316 F.3d at 1052.

■■ Futility, however, may justify denying leave to amend.[69] In particular, a district court may grant a motion to dismiss a case without leave to amend "where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."[70] A proposed amendment is futile where it could not survive a Rule 12 motion.[71]

## III. DISCUSSION

Chase contends that Plaintiff's Amended Complaint should be dismissed with prejudice because Plaintiff has not alleged any viable causes of action and any amendment would be futile. Chase also asks the Court to cancel the "Notice of Lis Pendens" Plaintiff filed with her original Complaint. In response, Plaintiff essentially seeks to amend and expound upon her pleading through her opposition brief. Although a party generally may not amend its pleading through its opposition brief,[72] the Court will liberally construe Plaintiff's opposition as a request for leave to amend and evaluate whether her new allegations state a claim for relief or whether further amendment would be futile.

As discussed in detail below, the Court concludes that: (a) the law of the case doctrine should not preclude the Court from considering Chase's motion; (b) the Court can consider the documents Chase submitted in connection with this motion; (c) Plaintiff cannot state a claim upon which relief may be granted under any of her theories; (d) dismissal with prejudice is appropriate as any further amendment

would be futile; and (e) the Court will accordingly vacate Plaintiff's Notice of Lis Pendens.

### A. The Law of the Case Doctrine & the Court's Prior "Finding"

In an order directing Plaintiff to serve Chase, the Court stated: "The court finds that Ms. Nicdao's complaint meets the plausibility criteria set forth in *Ashcroft v. Iqbal*, [556 U.S. 662] 129 S.Ct. 1937, 1949–50 [173 L.Ed.2d 868] (2009)."[73] Plaintiff invokes this statement in her Amended Complaint.[74] The Court liberally construes Plaintiff's reference to the statement as invoking the law of the case doctrine.

■■ Under that doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."[75] A court may depart from the law of the case if: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."[76]

■■ To the extent that the law of the case doctrine applies to the Court's statement, which was made in passing in a footnote before Chase had even been served, the Court finds that departure is warranted. The Court did not give the issue adequate consideration or allow Chase an opportunity to be heard before

---

69. *Bonin*, 59 F.3d at 845.

70. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir.2011).

71. *See Applied Elastomerics, Inc. v. Z–Man Fishing Prods., Inc.*, No. C 06–2469, 2007 WL 703606, at *2 (N.D.Cal. Mar. 5, 2007).

72. *See Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998).

73. Dkt. 5 at 1.

74. Dkt. 30 at 2–3.

75. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir.1998) (citations omitted).

76. *Id.* (emphasis and citations omitted).

making the statement. Consequently, manifest injustice would result if the Court applied the law of the case doctrine as it would preclude Chase from having an opportunity to challenge the sufficiency of the allegations against it. Additionally, as the analysis in Part III.C of this Order demonstrates, the Court's conclusion was clearly erroneous.

### B. Materials Outside the Pleadings

 Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[77] Rule 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.[78]

However, there are two exceptions to this general rule.[79] First, courts may consider materials submitted with or relied on by the complaint, even if they are not physically attached to the complaint, where their authenticity is not disputed.[80] Second, courts may take judicial notice of matters of public record under Federal Rule of Evidence 201.[81] This exception applies to undisputed matters of public record, as opposed to disputed facts stated in public records.[82]

 Plaintiff's Amended Complaint only includes one attachment—a copy of this Court's prior order dismissing the original Complaint.[83] Nonetheless, it explicitly and implicitly relies on a number of other documents. These include the original mortgage documents, the documents related to Plaintiff's request for a loan modification, various communications between Plaintiff and Chase, and several foreclosure notices.[84] Chase also submitted various documents from Plaintiff's bankruptcy case in support of its motion.[85] In her opposition, Plaintiff does not question the authenticity of these documents. Plaintiff also submitted numerous additional exhibits with her opposition, which the Court is construing as a request to amend her complaint.[86] The Court may consider these materials without converting Chase's motion for judgment on the pleadings to a motion for summary judgment.[87]

### C. Plaintiff's Claims

The Parties' submissions raise disputes concerning whether Plaintiff can state claims: (1) under HAMP; (2) related to MERS; (3) based on contract and quasi-contract theories; (4) based on wrongful foreclosure and fraud theories sounding in

---

77. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.2001).

78. Fed.R.Civ.P. 12(d).

79. S.F. Patrol Special Police Officers v. City & Cnty. of S.F., 13 Fed.Appx. 670, 675 (9th Cir.2001) (citing Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir.2001), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1125–26 (9th Cir.2002)).

80. Id. (citing Lee, 250 F.3d at 688).

81. Id. (citing Lee, 250 F.3d at 689).

82. Lee, 250 F.3d at 690.

83. See Dkt. 30.

84. See Dkt. 34.

85. See Dkt. 33.

86. See Dkt. 47.

87. See Vawter v. Quality Loan Serv. Corp., 707 F.Supp.2d 1115, 1118 n. 2 (W.D.Wash.2010) (finding that the court could consider the promissory note, deed of trust, assignment of the beneficial interest, and notice of trustee's sale on a motion for judgment on the pleadings in a similar action).

tort; (5) for a declaration that Chase cannot foreclose on the Condominium premised on several defenses; (6) to quiet title; and (7) under the Alaska Unfair Trade Practices and Consumer Protection Act. The Court concludes that Plaintiff cannot state a claim premised on any of her theories.

### 1. HAMP

▮ HAMP is a federal program whereby individual loan servicers voluntarily enter into agreements to modify loans in exchange for financial incentives.[88] The purpose is to assist homeowners who are in default or in imminent danger of defaulting on their mortgages by reducing their monthly payments to sustainable levels.[89] Under HAMP, lenders are required to suspend foreclosure activities while a borrower is being evaluated for a modification.[90] In order to be eligible for HAMP, a homeowner must occupy the property in question as his or her primary residence.[91]

▮ As Chase notes, many courts have found that a lender's failure to grant a loan modification under HAMP is not enforceable either on a private right of action or breach of contract theory.[92] Other courts, however, including courts within this Circuit, have found that a plaintiff may pursue a breach of contract claim even where the terms of the contract are dictated by HAMP because there has been no congressional direction that HAMP was intended to have preemptive effect.[93] Regardless, even the authorities relied on by Chase recognize that the fact that a transaction involved HAMP does not necessarily immunize a lender from all claims that may arise from that transaction.[94]

▮ Thus, Plaintiff may not allege claims premised on Chase's willingness to consider her for a modification under HAMP. This is because HAMP does not require a lender to modify any participating borrower's loan.[95] Plaintiff may, however, proceed with claims to the extent that she can allege that Chase breached an agreement to modify her loan apart from its mere willingness to consider her for a modification under HAMP.

### 2. MERS

MERS is a private electronic database that tracks the transfer of the beneficial interest in home loans and changes in loan servicers.[96] "MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS."[97] "As a result, most of the actions taken in

**88.** *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 665 n. 1, No. 12–15005, 2012 WL 688552, at *2 n. 1 (9th Cir. Mar. 2, 2012) (citation omitted).

**89.** *See Marks v. Bank of Am., N.A.*, No. 03:10–cv–08039–PHX–JAT, 2010 WL 2572988, at *5 (D.Ariz. June 22, 2010).

**90.** *Id.*

**91.** *Backal v. Wells Fargo*, No. 4:11–CV–563, 2011 WL 5999044, at *3 (E.D.Tex. Nov. 3, 2011), *adopted*, 2011 WL 5977455 (E.D.Tex. Nov. 29, 2011)

**92.** *See Vida v. OneWest Bank, F.S.B.*, No. 10–987–AC, 2010 WL 5148473, at *3–5 (D.Or. Dec. 13, 2010) (collecting cases); *see also*

*Nelson v. Bank of Am., N.A.*, 446 Fed.Appx. 158, 158 (11th Cir.2011) (similar).

**93.** *See, e.g., Wright v. Chase Home Finance, LLC*, No. CV 11–00095–PHX–FJM, 2011 WL 4101513, at *2 (D.Ariz. Sept. 14, 2011) (citing *Fletcher v. OneWest Bank, FSB*, 798 F.Supp.2d 925, 930 (N.D.Ill.2011)).

**94.** *Vida*, 2010 WL 5148473, at *5.

**95.** *Lucia v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 1059, 1069 (N.D.Cal.2011) (citations omitted).

**96.** *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir.2011).

**97.** *Id.* at 1040 (citations omitted).

MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans."[98]

By serving as the nominal record holder of deeds of trust, MERS allows lenders to bundle and sell the beneficial interest in mortgages without recording deed transfers.[99] "If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf."[100] In order to foreclose, a lender or its trustee generally must have authority to act as both the holder, or agent of the holder, of both the deed of trust and the promissory note together.[101]

In both her Amended Complaint and her opposition, Plaintiff makes extensive allegations concerning the involvement of MERS in her mortgage.[102] Plaintiff relies on a number of cases that support the proposition that a party is not the real party in interested or lacks standing to enforce a promissory note where the party does not have possession of the note and cannot establish that MERS had authority to transfer the note to it.[103] Citing the

Ninth Circuit's recent decision in *Cervantes v. Countrywide Home Loans, Inc.*, Chase persuasively argues that these contentions are irrelevant.[104]

In *Cervantes*, the plaintiffs had brought suit in the District of Arizona against their lenders for conspiracy to commit fraud by using MERS and had sought to amend their complaint to add a claim for wrongful foreclosure.[105] The district court dismissed the plaintiffs' complaint without permitting leave to amend.[106] The Ninth Circuit affirmed, finding that the district court properly dismissed the claim for fraud under Arizona law because the plaintiffs did not allege that they were misinformed about MERS's role as a beneficiary, they did not allege that they relied on misrepresentations about MERS when deciding to enter into the transactions, or that the designation of MERS as a beneficiary caused them any injury.[107]

Similarly, the court rejected the plaintiffs' proposed amendment to add a claim for wrongful foreclosure based on the theory that "any foreclosure on a home loan tracked in the MERS system is 'wrongful' because MERS is not a true beneficiary."[108] First, the court observed that the

---

**98.** *Id.*

**99.** *Id.* at 1039.

**100.** *Id.*

**101.** *Id.* (citation omitted).

**102.** Dkt. 30 at 5–6; Dkt. 47 at 17–27.

**103.** *See In re Wilhelm*, 407 B.R. 392, 397–405 (D.Idaho 2009) (holding that creditors could not seek relief from a bankruptcy stay because they were not the real parties in interest and lacked standing as they were not holders of the notes and failed to establish that MERS was the holder or had authority to transfer the notes); *Saxon Mortg. Servs. v. Hillery,* No. C–08–4357 EMC, 2008 WL 5170180, at *5 (N.D.Cal. Dec. 9, 2008) (similar); *Bellistri v. Ocwen Loan Serv., LLC,* 284 S.W.3d 619, 623–24 (Mo.Ct.App.2009) (similar); *Mortg. Elec.*

*Registration Sys., Inc. v. Sw. Homes of Ark., Inc.,* 2009 Ark. 152, 301 S.W.3d 1, 3–7 (2009) (finding that MERS, designated as the lender's nominee under the deed of trust, was merely the lender's agent, had no authority to exercise the lender's rights, and was not a necessary party to a foreclosure action where the borrowers, lender, and trustee were parties).

**104.** Dkt. 51 at 15–18 (citing, inter alia, 656 F.3d 1034 (9th Cir.2011)).

**105.** 656 F.3d at 1038–40.

**106.** *Id.* at 1038.

**107.** *Id.* at 1038, 1041–42.

**108.** *Id.* at 1042–45.

Arizona state courts had not recognized a cause of action for wrongful foreclosure and "plaintiffs choosing 'the federal forum are not entitled to trailblazing initiatives under state law.' "[109] Second, even in jurisdictions where wrongful foreclosure claims are recognized, "such claims typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower."[110] Instead, the plaintiffs had attempted to assert a wrongful foreclosure claim on the basis that "all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the system splits the deed from the note, and, thus, no party is in a position to foreclose."[111] The court rejected this theory, explaining:

> The legality of MERS's role as a beneficiary may be at issue where MERS initiates foreclosure in its own name, or where the plaintiffs allege a violation of state recording and foreclosure statutes based on the designation.... This case does not present either of these circumstances and, thus, we do not consider them.
>
> Here, MERS did not initiate foreclosure: the trustees initiated foreclosure

in the name of the lenders. Even if MERS were a sham beneficiary, the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after the plaintiffs defaulted on their loans....

Further, the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders.[112]

 In this case, Chase contends that it holds possession of the note, endorsed in blank, and has submitted a copy attached to a declaration submitted by one of its employees in support of its motion.[113] Chase is the servicing agent of U.S. Bank, the trustee of the trust that owns the loan.[114] In other words, Chase is not relying on a transfer of the note through MERS and the authorities relied on by Plaintiff are distinguishable. Nor is MERS seeking to foreclose. Consequently, Plaintiff may not proceed on its claims to the extent that they are premised on MERS's involvement in the mortgage transaction, including allegations concerning individuals working for both Chase and MERS.[115]

---

109. *Id.* at 1043 (citation and alteration marks omitted).

110. *Id.* (citations omitted).

111. *Id.* at 1044.

112. *Id.* (citations omitted).

113. *See* Dkt. 34 ¶ 3, Ex. A. Under Alaska law, Chase is therefore entitled to enforce the obligation. Alaska Stat. § 45.03.205(b) ("When endorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially endorsed."); § 45.03.301 ("A person entitled to enforce an instrument is the holder of the instrument....").

114. *See* Dkt. 47–25 at 4.

115. *See Chua v. IB Prop. Holdings, LLC,* No. CV 11–05894 DDP (SPx), 2011 WL 3322884, at *2 (C.D.Cal. Aug. 1, 2011) ("Plaintiffs have not identified a relevant legal authority prohibiting one individual from working for both [a MERS member] and MERS or from acting as an agent for both." (citation omitted)); *Silving v. Wells Fargo Bank, N.A.,* No. CV 11–0676–PHX–DGC, 2012 WL 135989, at *5 (D.Ariz. Jan. 18, 2012) (similar); *Bain v. Metro. Mortg. Group, Inc.,* No. C09–0149–JCC, 2010 WL 891585, at *6 (W.D.Wash. Mar. 11, 2010) (similar).

### 3. Contract Theories

Plaintiff's Amended Complaint and opposition appear to invoke a number of contract theories. In her Amended Complaint, Plaintiff alleges that she complied with the Forbearance Plan but that Chase continued to proceed with foreclosure.[116] Broadly construed, Plaintiff's allegations sound in breach of contract. Plaintiff also explicitly invokes the covenant of good faith and fair dealing, quasi-contract, and promissory estoppel in her opposition.[117]

#### a) Breach of Contract

Chase argues that Plaintiff cannot state a breach of contract claim because the Forbearance Plan and HAMP Application did not require it to offer her a loan modification, because any agreement to modify her loan was not supported by new consideration, and it was not obligated to modify the explicit terms of the loan under the covenant of good faith and fair dealing.[118]

In order to assert a claim for breach of contract, a plaintiff must generally allege: (1) existence of a contract; (2) breach; (3) causation; and (4) damages.[119] The existence of a contract, in turn, requires "an offer including all essential terms, an unequivocal acceptance of those terms by the offeree, consideration, and an intent to be bound by the contract. . . ."[120] Generally, an "agreement to do what one is contractually obligated to do is not valid consideration."[121]

In Alaska, all contracts also include the implied covenant of good faith and fair dealing.[122] The purpose of the covenant of good faith and fair dealing is "to effectuate the reasonable expectations of the parties to the agreement, not to alter those expectations."[123] Thus, the covenant "cannot be interpreted to prohibit what is expressly permitted by" the

---

**116.** *See* Dkt. 30 at 7–11.

**117.** Dkt. 47 at 32, 37–38; Dkt. 47–49.

**118.** Dkt. 32 at 20–26.

**119.** *See Great W. Sav. Bank v. George W. Easley Co.*, 778 P.2d 569, 577–78 (Alaska 1989) (finding that a complaint was sufficient where it alleged that the parties had a contractual obligation, that the other party breached the contract, and that the plaintiff suffered damages); *Winn v. Mannhalter*, 708 P.2d 444, 450 (Alaska 1985) ("Causation is a required element in an action for breach of contract"); *cf., e.g., Ledcor Indus. (USA) Inc. v. Virginia Surety Co.*, No. C09–1807RSM, 2011 WL 6140957, at *7 (W.D.Wash. Dec. 9, 2011) (stating that under Washington law, "The elements of a cause of action for breach of contract are: (1) the existence of a legal duty under the contract; (2) breach of that duty; and (3) damages proximately caused by the breach." (citation omitted)); *Gray v. Carolina Energy Solutions, LLC*, No. CV–10–0698–PHX–NVW, 2010 WL 2691563, at *5 (D.Ariz. July 6, 2010) ("To establish a claim for breach of contract in Arizona, a plaintiff must prove the existence of an enforceable contract, a

breach of that contract, and damages caused by the breach." (citation omitted)).

**120.** *Ford v. Ford*, 68 P.3d 1258, 1263 n. 1 (Alaska 2003) (citation omitted); *see also Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997) (citations omitted).

**121.** *Apex Control Sys., Inc. v. Alaska Mech., Inc.*, 776 P.2d 310, 313 n. 3 (Alaska 1989) (citation omitted); *see also Restatement (Second) of Contracts* § 73 ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration . . . ."); *id.* cmt. c (noting "performance of a contractual duty is not consideration for a new promise" but that, for example, where a party could have declared bankruptcy, an offer of a lesser amount owed in full settlement of a debt is valid as the forbearance of bankruptcy is new consideration).

**122.** *See Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 992 (Alaska 2009) (citing *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).

**123.** *Ramsey*, 936 P.2d at 133 (citation omitted).

contract.[124]

▮ The covenant of good faith and fair dealing includes both subjective and objective elements.[125] "The subjective element 'prohibits one party from acting to deprive the other of the benefit of the contract.'"[126] "The objective element 'requires each party to act in a manner that a reasonable person would regard as fair.'"[127] A party asserting a breach of the covenant must show that both the subjective and objective elements of the covenant have been violated.[128]

Under the Forbearance Plan, Chase agreed to accept reduced payments and explore "workout options" over a three-month period in exchange for those reduced payments and financial information.[129] It also indicated that regular payments and "foreclosure activity" would resume after that period ended.[130] The HAMP Application states that Chase would use the information Plaintiff provided to evaluate her eligibility for a loan modification, but that it was "not obligated" to offer her a modification, that she might continue to receive foreclosure notices, that any payments received during the evaluation would not cure a default, and that Chase did not waive its right to foreclose.[131] Plaintiff also indicated that the Condominium was a "Second Home" on the application while simultaneously certifying that it was "owner-occupied" and that she intended to reside there for the next twelve months.[132]

▮ Under the terms of the Forbearance Plan and the HAMP Application, Chase never promised to modify Plaintiff's loan. And, as noted above, HAMP did not require Chase to do so. Indeed, Plaintiff was ineligible for a HAMP modification as she did not occupy the Condominium as her primary residence. Nor did either agreement require Chase to accept less than the amounts due under the Note beyond the three-month forbearance period. Additionally, as Chase notes, Plaintiff did not provide new consideration for a loan modification. Plaintiff also cannot allege that Chase's failure to modify the loan violated the covenant of good faith and fair dealing as Chase never promised to do so. Consequently, Plaintiff cannot assert a claim for breach of contract based on the written agreements.

▮ Nonetheless, Plaintiff also contends that Chase made an "oral promise that they would not foreclose on Plaintiff's mortgage provided she abided by the Forbearance" Plan.[133] An oral modification to a written contract may be enforceable.[134] However, even assuming that Plaintiff could adequately allege an oral promise, the Forbearance Plan only extended for three months. Even if enforceable, an oral promise to abide by the Forbearance Plan thus would not commit Chase to anything beyond that period. Moreover, any allegation that Chase would orally agree not to foreclose for reduced payments indefinitely, unsupported by new consider-

---

124. *Id.* (citation omitted).

125. *Anchorage Chrysler*, 221 P.3d at 992 (citations omitted).

126. *Id.* (citation omitted).

127. *Id.* (citation omitted).

128. *Id.* (citations omitted).

129. *See* Dkt. 34 Ex. D.

130. *Id.* at 2.

131. Dkt. 34 Ex. F. at 3.

132. *Id.* at 1, 3.

133. Dkt. 47 at 37.

134. *Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 586 n. 29 (Alaska 1976) (citations omitted).

ation, is not plausible. A much more likely explanation of what occurred is that the Chase would have agreed to reduced payments on a temporary basis as it evaluated whether Plaintiff was eligible for "workout options" like HAMP. Accordingly, Plaintiff cannot assert a breach of contract claim based upon the written agreements or an oral modification.

### b) Promissory Estoppel

In her opposition, Plaintiff seeks to assert a claim based on Chase's alleged "oral promise" not to foreclose based on a promissory estoppel theory.[135] Chase contends that Plaintiff has failed to adequately allege that any promise existed, that promissory estoppel does not apply where there is a valid contract, and that to the extent there was a promise, Chase complied with the Forbearance Plan.[136]

 "In most states ... 'promissory estoppel is not a cause of action in itself; rather it is a subset of a theory of recovery based on a breach of contract and serves as a substitute for consideration.'"[137] "Under Alaska law, a promissory estoppel claim has four requirements: (1) The action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably foreseeable by the promisor; (3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and (4) enforcement is necessary in the interest of justice."[138]

 Ordinary contract principles generally apply to promissory estoppel claims, and accordingly "any promise which is to serve as the basis for a promissory estoppel claim or defense [must] be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration."[139] In other words, the promise must be "very clear" and "precise."[140]

Plaintiff relies on a California appellate case, *Aceves v. U.S. Bank, N.A.*[141] In that case, the plaintiff had agreed to forego further bankruptcy proceedings based on a bank's promise to "work with" her in an attempt to reinstate and modify her loan.[142] Instead, the bank proceeded with foreclosure.[143] The court found that the elements of promissory estoppel were satisfied since the promise was sufficiently clear, the plaintiff relied on it to her detriment by not pursuing further bankruptcy proceedings through which she may have been able to "save her home," and that plaintiff's reliance on the promise was both reasonable and foreseeable (and indeed, expected by the bank).[144]

 This case is not similar to *Aceves*. First, as noted above, Chase did not foreclose during the forbearance period (in accord with the Forbearance Plan), and

---

135. Dkt. 47 at 37–38.

136. Dkt. 51 at 30–32.

137. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 (9th Cir.2009) (citation omitted).

138. *See United States ex. rel. N. Star Terminal & Stevedore Co. v. Nugget Constr., Inc.*, 445 F.Supp.2d 1063, 1072 (D.Alaska 2006) (citation omitted). *Accord Simpson v. Murkowski*, 129 P.3d 435, 440 (Alaska 2006).

139. *Barnes*, 570 F.3d at 1106 (citations and alteration marks omitted).

140. *Nugget Constr.*, 445 F.Supp.2d at 1072 (quoting *Simpson*, 129 P.3d at 443–44).

141. 192 Cal.App.4th 218, 120 Cal.Rptr.3d 507 (2011); Dkt. 47 at 37.

142. *Id.* at 511.

143. *Id.*

144. *Id.* at 512–18.

consequently, it did not violate any promise not to do so. Second, to the extent that Plaintiff alleges that Chase made a promise not to foreclose for any period of time beyond three months, her allegations are very vague and are not sufficiently precise to be enforceable, let alone plausible. Third, Plaintiff did not substantially change her position in reliance on the alleged promise. Plaintiff alleges that she made nine monthly payments of $948, but Plaintiff was *already obligated to pay those amounts* (if not more) under the Forbearance Plan and the Note. Making reduced payments on a preexisting obligation does not constitute reliance and is not a "substantial change of position." [145] Third, under these circumstances, the *interests of justice would not support the enforcement of a promise by Chase to forego foreclosure indefinitely.* Plaintiff's proposed claim for promissory estoppel accordingly fails.

### c) Quasi–Contract

Plaintiff asserts that U.S. Bank has "unjustly enriched itself by receiving payments from the Plaintiff that it was not supposed to receive" and that "[r]estitution to Plaintiff is in order." [146] Chase observes that U.S. Bank is not a party to this case, and argues that any claim against it must fail as it was entitled to any mortgage payments under the terms of the Note and a party cannot proceed on a quasi-contract claim where there is a valid express agreement.[147]

■■■■ Under Alaska law, a party seeking to invoke the doctrine of unjust enrichment must establish: (1) that it conferred a benefit on the other party; (2) appreciation of the benefit by the other party; and (3) that the other party accepted and retained the benefit under such circumstances that it would be inequitable for the other party to retain it without paying its value.[148] "[T]he most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant must receive a true windfall or 'something for nothing.'" [149] "It is axiomatic that a party cannot be enriched at the expense of another for receipt of that to which the party is legally entitled." [150] Generally, a "[p]laintiff may not rely on a theory of implied contract where a valid, express contract governs." [151]

■■■ As discussed above, the Parties' relationship was governed by valid contracts and Plaintiff cannot plausibly allege a breach of the contracts at issue. Additionally, Chase was entitled to any payments it received under the terms of the Note, and accordingly, it was not "enriched." Moreover, there was nothing "unjust" about the payments as Chase did

---

145. *See De La Cruz v. Citi Mortg. Inc.*, No. 1:12–cv–0141–AWI–BAM, 2012 WL 487004, at *3 (E.D.Cal. Feb. 14, 2012) (finding that promissory estoppel claim failed where the "plaintiffs d[id] not allege sufficient reliance on the new representation [that negotiations to modify the loan would take place], in that plaintiffs already were bound contractually to make loan payments").

146. Dkt. 47 at 32.

147. Dkt. 51 at 28–29.

148. *Ware v. Ware*, 161 P.3d 1188, 1197 (Alaska 2007) (citation omitted).

149. *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987) (citation omitted).

150. *Id.* at 747.

151. *Pfau v. Wash. Mut., Inc.*, No. CV–08–00142–JLQ, 2009 WL 484448, at *11 (E.D.Wash. Feb. 24, 2009); *see also Restatement (Third) of Restitution and Unjust Enrichment* § 2(2) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.").

not receive "something for nothing." Plaintiff cannot allege a claim for unjust enrichment.

#### 4. Tort Theories

In her Amended Complaint and opposition, Plaintiff appears to assert wrongful foreclosure and fraud claims sounding in tort.[152] Chase suggests that these claims are barred under the economic loss doctrine and further contends that Plaintiff cannot recover under either theory.[153]

##### a) Economic Loss Doctrine

■ Generally, "where contractual remedies exist, courts should hesitate to graft additional remedies in the absence of some good reason."[154] Accordingly, "[t]he economic loss doctrine provides that certain economic losses are properly remediable only in contract."[155] This doctrine is most typically applied in product liability cases, as well as negligence and strict liability cases.[156] Some courts have found, however, that even where the parties have a contractual relationship, the doctrine does not bar claims based on behavior occurring outside of that relationship.[157]

In this case, Chase has not directed the Court to any Alaska authority applying the doctrine to the claims at issue here and Plaintiff appears to seek equitable relief in addition to damages. Accordingly, the Court will evaluate Plaintiff's tort theories without deciding whether the economic loss doctrine might bar them.

##### b) Wrongful Foreclosure

■ Plaintiff bases her wrongful foreclosure claim on the alleged illegitimacy of transfers through MERS. The Ninth Circuit's decision in *Cervantes* is directly on point here.[158] As in that case, this Court is not aware of any decision by the Alaska state courts recognizing a wrongful foreclosure claim and Plaintiff has cited none. Moreover, there has been no foreclosure yet, and Plaintiff has not alleged that she was not in default or that other procedural issues caused her damages. Nor has MERS initiated foreclosure. Even if a wrongful foreclosure is a valid claim in Alaska, Plaintiff cannot state such a claim under these circumstances.

##### c) Fraud

Plaintiff discusses several instances of allegedly fraudulent conduct in her opposition, consisting of the following: (1) the fact that the "Assignment of Deed of Trust" dated January 2, 2008, transferring the beneficial interest to U.S. Bank identifies "Mortgage Electronic Registration Systems, Inc. BNC Mortgage, Inc." rather than BNC, alone, as the beneficiary of the mortgage; (2) a Chase employee signed the Assignment of Deed of Trust as an agent of MERS; (3) the "Substitution of Trustee" substituting Alaska Trustee as the trustee under the Deed of Trust dated December 17, 2008, indicates that it was served on "January 6, 2008"; (4) the Substitution of Trustee supposedly substitutes Alaska Trustee as the trustee in Chase's place, even though "there is no legal document substituting Chase" as the trustee; (5) the Substitution of Trustee indicates

---

**152.** Dkt. 30 at 2; Dkt. 47 at 17–32.

**153.** Dkt. 51 at 18–27.

**154.** *St. Denis v. Dep't of Hous. & Urban Dev.*, 900 F.Supp. 1194, 1206 (D.Alaska 1995).

**155.** *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir.2007).

**156.** *Id.* at 873–76.

**157.** *See id.* at 880 (finding that a fraud claim was not barred by the economic loss doctrine under Nevada law).

**158.** *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042–45 (9th Cir.2011).

that Plaintiff's loan is part of the Structured Asset Investment Loan Trust–SAIL 2005-3 ("SAIL Trust"), but SEC documentation on the SAIL Trust does not show her loan as being part of it; and (6) a Chase employee told her that she could not contact Plaintiff on her cellular phone, but another employee later told her that they could do so.[159]

In Alaska, "[c]ommon law fraud claims require a showing of (1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages."[160] Additionally, in federal court a plaintiff must plead fraud with particularity as required by Rule 9(b) in addition to satisfying Rule 8's plausibility standard.[161] "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly fraudulent statement, and why it is false.'"[162]

Plaintiff's assertions of fraud do not come remotely close to satisfying the applicable standards. First, as the Court has already explained, Plaintiff's objections to transfers of interests in her loan through MERS are not actionable. Second, Plaintiff has not identified any reason why an individual cannot serve as both an agent of MERS and a MERS member. Third, the service date on the Substitution

of Trustee form is obviously a mistake. Fourth, the Substitution of Trustee substitutes Alaska Trustee as the trustee in McKinley's place, not Chase's.[163] Fifth, the SEC document Plaintiff submitted does not purport to be a complete list of all loans within the SAIL Trust.[164] Sixth, mere confusing telephone interactions with customer service representatives do not amount to "fraud." In any event, Plaintiff has not plausibly alleged that any of these representations were knowingly false or were intended to induce her to rely on them, that she actually relied on them, or that she suffered any harm as a result of them. Plaintiff's assertions of fraud are patently insufficient to state a claim for relief.

### 5. Declaratory Relief

Plaintiff appears seek a declaration that Chase cannot foreclose on her Condominium.[165] Plaintiff asserts a number of defenses that might support this request, consisting of unconscionability,[166] estoppel and waiver,[167] and her "real party-in-interest" defense.[168] Chase argues that these doctrines are inapplicable because they are defenses.[169] The Declaratory Judgment Act, however, provides that an interested party may file a civil action seeking to obtain a declaration of the rights of the parties.[170] "The purpose of the Act is 'to relieve potential defendants

159. Dkt. 47 at 27–32.

160. Shehata v. Salvation Army, 225 ·P.3d 1106, 1114 (Alaska 2010) (citation omitted).

161. United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054–55 (9th Cir.2011) (citations omitted).

162. Id. at 1055 (citation and alteration marks omitted).

163. See Dkt. 47–14. Chase is identified as the servicer for U.S. Bank, which in turn is listed as the both the beneficiary of the loan and the trustee for the SAIL Trust. Id.

164. See Dkt. 47–29.

165. Dkt. 47 at 38.

166. Dkt. 30 at 3.

167. Dkt. 47 at 35–36.

168. Id. at 17, 33–35.

169. Dkt. 32 at 26–27; Dkt. 51 at 30.

170. 28 U.S.C. § 2201(a) (providing that "upon the filing of an appropriate pleading" a court "may declare the rights and other legal

from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.' " [171]

### a) Unconscionability

 The unconscionability of a contract or a contractual term is determined "in the light of its setting, purpose and effect." [172] "A contract or a contractual term is 'not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party.' " [173] Nonetheless, "unconscionability may exist if the circumstances indicate a 'vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party.' " [174]

 Plaintiff is an experienced real estate and mortgage broker. [175] There was no "vast disparity of bargaining power" here, nor are the terms of the loan or Forbearance Agreement unreasonable. The doctrine of unconscionability is inapplicable.

### b) Estoppel & Waiver

 "A party claiming equitable estoppel must prove four elements: (1) an assertion of a position by word or conduct; (2) reasonable reliance on the assertion; (3) resulting prejudice; and (4) the estoppel will be enforced only to the extent that justice requires." [176] Under Alaska law, waiver is defined "as the intentional relinquishment of a known right." [177] Furthermore, an implied waiver may arise "where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party." [178]

Plaintiff relies on the Bankruptcy Appellate Panel of the Ninth Circuit's decision in *In re Veal* [179] in support of her estoppel and waiver theories. [180] In that case, a loan servicing agent had filed a proof of claim in a debtors' bankruptcy proceeding showing a transfer of the debtors' mortgage from the original lender to a third party, but merely submitted an unverified letter in support of its contention that it had acquired the third party's mortgage servicing business. [181] The debtors objected, but the bankruptcy court overruled their objection. [182] On appeal, the servicing agent attempted to argue that the debtors had waived the objection by listing it as a creditor in their bankruptcy filings. [183] The

---

relations of any interested party seeking such a declaration'').

171. *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. ESI Ergonomic Solutions, LLC*, 342 F.Supp.2d 853, 862 (D.Ariz.2004) (quoting *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir.1981)).

172. *Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 268 (Alaska 2009) (quoting *Restatement (Second) of Contracts* § 208 cmt. a).

173. *Id.* (citation omitted).

174. *Id.* (citation omitted).

175. Dkt. 34 Ex. C; Dkt. 33 Ex. B at 1.

176. *See Cowan v. Yeisley*, 255 P.3d 966, 977 n. 43 (Alaska 2011) (quoting *Tufco, Inc. v. Pac. Envtl. Corp.*, 113 P.3d 668, 671 (Alaska 2005)).

177. *See Carr–Gottstein Foods Co. v. Wasilla, LLC*, 182 P.3d 1131, 1136–37 (Alaska 2008).

178. *Id.* (citations omitted).

179. 450 B.R. 897 (9th Cir. BAP 2011).

180. Dkt. 47 at 35–36.

181. *Veal*, 450 B.R. at 903.

182. *Id.* at 903, 906.

183. *Id.* at 921.

appellate panel rejected the servicing agent's argument and reversed.[184] The court noted that although the filings were entitled to evidentiary weight, they were not "necessarily and finally determinative of all facts contained therein." [185]

■ Plaintiff suggests that *Veal* should bar Chase's affirmative defenses of waiver and estoppel.[186] Chase correctly notes that Plaintiff has not shown how *Veal* or the defenses at issue there entitles her to the relief she seeks.[187] Regardless, for the same reasons that her promissory estoppel and fraud claims fail, Plaintiff cannot establish the elements of equitable estoppel or waiver here. Plaintiff has not plausibly alleged that Chase ever promised to permanently modify her loan or forego foreclosure or that she reasonably relied on any such promises.

### c) Real Party In Interest

Throughout her Amended Complaint and opposition, Plaintiff suggests that Chase is not entitled to foreclose because it is not the real party in interest.[188] Plaintiff refers to Judge Ross's decision in her bankruptcy case, where he rejected U.S. Bank's request for relief from the automatic bankruptcy stay.[189] There, Judge Ross found that U.S. Bank had not demonstrated that it was the real party in interest entitled to foreclose where it merely submitted the Assignment of Deed of Trust showing the MERS transfer of the beneficial interest in the loan from BNC.[190]

Here, however, Chase has submitted a copy of the Note, endorsed in blank, authenticated through a declaration submitted by one of its employees.[191] Similarly, the other authorities that Plaintiff relies on are readily distinguishable or not persuasive.[192] Plaintiff's real party in interest defense fails.

### 6. Quiet Title

Plaintiff also asks the Court to quiet title to the Condominium in light of "the wrongful foreclosure, fraud, quasi contract and other violations that Defendant committed against Plaintiff...." [193] Chase argues that a quiet title action is inappropriate against a mortgagee, that it does not claim ownership of the Condominium, and regardless, in order to obtain title free of any liens, Plaintiff would have to allege that she has satisfied the debt.[194]

■ Under Alaska law, a person in possession of real property "may bring an action against another who claims an adverse estate or interest in the property for

184. *Id.* at 921–22.

185. *Id.* at 921.

186. Dkt. 47 at 36.

187. Dkt. 51 at 30.

188. Dkt. 47 at 17, 33–35.

189. *Id.* at 13–14, 17; Dkt. 30 at 5.

190. Dkt. 47–25; Dkt. 47–26.

191. Dkt. 32 ¶ 3, Ex. A.

192. *See In re Veal*, 450 B.R. 897, 903 (9th Cir. BAP 2011) (indicating that the servicing agent had only submitted an unsworn letter to show a transfer of the loan from a third party to it); *Wells Fargo Bank, N.A. v. Farmer*, No. 27296/07, 19 Misc.3d 1141(A), 2008 WL 2309006, at *1–2 (N.Y.Sup.Ct. June 5, 2008) (finding that the purported trustee had failed to adequately demonstrate that it owned the loan in question). The other decision Plaintiff relies on was reversed. *See In re Hwang*, 438 B.R. 661, 665 (C.D.Cal.2010) (reversing the bankruptcy court's finding that the real party in interest was the trustee of the securitization trust where the record did not support the supposition that the note was likely securitized).

193. Dkt. 47 at 38.

194. Dkt. 51 at 33–34.

the purpose of determining the claim."[195] Here, however, the Court has explained that all of the theories that Plaintiff bases her request upon are without merit. Regardless, Chase is also correct that other courts interpreting similar statutes have found that a borrower could not assert a quiet title claim against a lender without paying off the debt.[196] Chase appears to be correct that Plaintiff is essentially asking the Court to "give her a free house" at its expense. Plaintiff has not alleged any valid basis for the Court to do so.

### 7. Alaska Unfair Trade Practices and Consumer Protection Act

Plaintiff's opposition concludes with a "Prayer for Relief" which includes references to "the Alaska Unfair and Deceptive Business Practices and Consumer Protection Act."[197] Plaintiff also attached several excerpts from the Alaska Unfair Trade Practices and Consumer Protection Act (some of which are handwritten).[198] In particular, Plaintiff placed a check mark next to an excerpt of the statute identifying "fraudulently conveying or transferring goods or services by representing them to be those of another" as an unfair practice.[199] Even construing these references as an attempt to allege a claim under the Act,[200] the Court concludes that any such claim must fail.

■■■■ The Act provides a cause of action for persons who suffer an ascertainable loss of money or property as a result of another person's prohibited acts.[201] In order to prevail on a claim under the Act, a plaintiff must establish that an unfair or deceptive practice occurred.[202] "[A]n act or practice is deceptive or unfair if it has the capacity or tendency to deceive."[203] The Alaska Supreme Court has previously rejected an attempt to assert a claim under the Act based on a promise not to foreclose on a mortgage.[204]

■■■ Nothing in any of Plaintiff's submissions plausibly suggests that Chase conveyed or transferred goods or services "by representing them to be those of another." Nor has Plaintiff identified any conduct that might reasonably be construed as "unfair" or "deceptive." To the contrary, it appears that Chase did exactly what it said it would do under the Forbearance Plan. Accordingly, Plaintiff cannot assert a claim under the Alaska Unfair Trade Practices and Consumer Protection Act.

---

**195.** *See* Alaska Stat. § 09.45.010.

**196.** *See, e.g., Bacon v. Countrywide Bank FSB,* No. 2:1 1-cv-00107-EJL-CWD, 2012 WL 642658, at *7 (D.Idaho Feb. 8, 2012) (citation omitted), *adopted,* 2012 WL 639521 (D.Idaho Feb. 28, 2012). As one court explained:
> The logic of such a rule is overwhelming. Under a deed of trust, a borrower's lender is entitled to invoke a power of sale if the borrower defaults on its loan obligations. As a result, the borrower's right to the subject property is contingent upon the borrower's satisfaction of loan obligations.

*Evans v. BAC Home Loans Servicing LP,* No. C10-0656 RSM, 2010 WL 5138394, at *4 (W.D.Wash. Dec. 10, 2010).

**197.** Dkt. 47 at 38–40.

**198.** Dkt. 47–45; Dkt. 47–55.

**199.** Dkt. 47–45; Alaska Stat. § 45.50.471(b)(1).

**200.** *See* Alaska Stat. §§ 45.50.471—.561.

**201.** § 45.50.531(a).

**202.** *ASRC Energy Servs. Power and Commc'ns, LLC v. Golden Valley,* 267 P.3d 1151, 1158–59 (Alaska 2011) (citation omitted).

**203.** *Id.* at 1159 (citation omitted).

**204.** *Barber v. Nat'l Bank of Alaska,* 815 P.2d 857, 860–61 (Alaska 1991).

## D. Dismissal With Prejudice

■ Chase requests that the Court dismiss Plaintiff's Second Amended Complaint with prejudice arguing that any amendment would be futile.[205] The Ninth Circuit has indicated leave to amend should generally be granted "unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs."[206] Nonetheless, a district court may still deny a request for leave to amend where it would be futile.[207]

■ In this case, any further amendment would be futile. The Court has already permitted Plaintiff leave to amend once, and has liberally construed her opposition as a proposal for further amendment. The Court has given an exceptionally broad construction to Plaintiff's allegations. Nowhere is there any hint of a plausible claim. The terms of the Parties' relationship are not in dispute, and Chase has not breached the terms of the Parties' agreements. Plaintiff asked to be considered for a HAMP modification, Chase considered Plaintiff for the modification as it said it would, but she did not qualify under the terms of that program. Plaintiff's suggestion of an oral promise by Chase not to foreclose in perpetuity is implausible and defies common sense. Her contentions concerning MERS are irrelevant. Her allegations of fraud are premised on commonplace typographical errors and erroneous interpretations of documents that she did not rely on. No amount of pleading skill or number of attempts could transform these contentions into an actionable claim. There would be no point to permitting further amendment. Accordingly, dismissal with prejudice is appropriate.

## E. Lis Pendens

Chase also asks the Court to cancel the Notice of Lis Pendens Plaintiff filed along with her original Complaint.[208] As the Court is dismissing this case with prejudice, it will also vacate the Notice of Lis Pendens.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings (Docket No. 32) is GRANTED. Plaintiff's claims are dismissed with prejudice. The Court further vacates the Notice of Lis Pendens filed by Plaintiff at Docket No. 1-1.

---

**205.** Dkt. 32 at 14.

**206.** *Johnson v. Lucent Techs. Inc.,* 653 F.3d 1000, 1011 (9th Cir.2011) (quoting *McQuillion v. Schwarzenegger,* 369 F.3d 1091, 1099 (9th Cir.2004)).

**207.** *McQuillion,* 369 F.3d at 1099.

